**AXEL JOHNSON, INC., Plaintiff,**

v.

**ARTHUR ANDERSEN & CO., Defendant.**

**No. 89 Civ. 6490(MEL).**

United States District Court, S.D. New York.

April 25, 1992.

Milberg Weiss Bershad Specthrie & Lerach, New York City (Jared Specthrie, Michael C. Spencer, Sanford P. Dumain, Deborah Clark–Weintraub, of counsel), for plaintiff.

Curtis, Mallet–Prevost, Colt & Mosle, New York City (Eliot Lauer, Peter Sullivan, Benard V. Preziosi, Jr., of counsel), for defendant.

Otto G. Obermaier, U.S. Atty., S.D.N.Y., New York City (Kay K. Gardiner, Asst. U.S. Atty., of counsel).

LASKER, District Judge.

Axel Johnson, Inc. moves under Fed. R.Civ.P. 60(b) for relief from the dismissal of its securities fraud complaint against Arthur Andersen & Co. Its earlier suit was dismissed as time-barred under the Supreme Court's decision in *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* — U.S. ——, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991). *Lampf* established a new uniform statute of limitations for actions pursuant to § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) (1988), of one year from the date of discovery with a maximum three year period of repose, and, in conjunction with the decision issued the same day in *James B. Beam Distilling Co. v. Georgia,* — U.S. ——, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991), established that the new rule was to be applied retroactively to pending suits. The basis for Johnson's motion is the newly enacted § 27A of the Act, § 476 of the Federal Deposit Insurance Corporation Improvement Act of 1991, P.L. No. 102–242, which purports to "undo" retroactive application of *Lampf,* and which, if valid, requires the reinstatement of Johnson's claim.

Andersen opposes the motion on the grounds that the new § 27A violates separation of powers doctrine and accordingly

is unconstitutional and invalid.[1] Andersen also argues that even if Johnson's § 10(b) claim is reinstated, the court should not reassert jurisdiction over the related state claims, which have been pressed in state court since they were dismissed from this court for want of pendent jurisdiction in the absence Johnson's federal claims.

The Attorney General of the United States has been notified of Andersen's challenge to the constitutionality of a federal statute pursuant to 28 U.S.C. § 2403(a), and has filed a "Statement of Interest" in support of the statute's constitutionality, but has not intervened in the matter.

Johnson's motion is granted.

## I.

Axel Johnson instituted this suit on September 28, 1989, alleging claims under § 10(b) and state law. The suit was filed within the then-applicable six year limitations period borrowed from analogous New York law. On April 30, 1991, this court denied Andersen's motion to dismiss on both substantive and timeliness grounds, holding that although the Court of Appeals had established a new, one year/three year statute of limitations in *Ceres Partners v. GEL Assoc.*, 918 F.2d 349 (2d Cir.1990), and although Johnson's suit would have been barred under that new rule, *Ceres* did not apply retroactively in this case. *See Axel Johnson, Inc. v. Arthur Andersen & Co.*, 762 F.Supp. 599 (S.D.N.Y.1991). After that decision, the Supreme Court's decisions in *Lampf* and *Jim Beam* were handed down, and accordingly on October 11, 1991, the case was dismissed as time-barred. The time for appeal from that dismissal expired before § 27A was enacted or Johnson moved for relief.

### A. The new statute

On December 19, 1991, the President signed into law new § 27A of the Securities and Exchange Act of 1934, which provides:

(a) *Effect on Pending Causes of Action.*—The limitations period for any pri-

vate civil action implied under section 10(b) of this Act that was commenced on or before June 19, 1991, shall be the limitation period provided by the laws applicable in the jurisdiction, including principles of retroactivity, as such laws existed on June 19, 1991.

(b) *Effect on Dismissed Causes of Action.*—Any private civil action implied under section 10(b) of this Act that was commenced on or before June 19, 1991—

(1) which was dismissed as time barred subsequent to June 19, 1991, and

(2) which would have been timely filed under the limitation period provided by the laws applicable in the jurisdiction, including principles of retroactivity, as such laws existed on June 19, 1991,

shall be reinstated on motion by the plaintiff not later than 60 days after the date of enactment of this section.

It is not disputed that the statute, if constitutional, entitles Axel Johnson to reinstatement of its federal claims. The first motion to dismiss Johnson's claims as time-barred was denied under the law of this jurisdiction as it existed immediately before the Supreme Court decided *Lampf*. Johnson has filed for reinstatement of its claims within the time specified by § 27A. Accordingly, the sole basis for Andersen's opposition is its claim that the statute is unconstitutional.

## II.

### A. General objections to § 27A

■ At the outset, we note that Congress has the power to set statutes of limitation as part of any legislative scheme it devises. It can cause such provisions to apply retroactively as well as prospectively. *See Campbell v. Holt*, 115 U.S. 620, 6 S.Ct. 209, 29 L.Ed. 483 (1885). Andersen objects that rather than simply enact a new statute of limitations, in adopting § 27A Congress impermissibly opted only to provide a new rule for those cases filed on or before June 19, 1991 without changing the law prospec-

---

1. Andersen's separation of powers argument also implicates due process concerns, which are

addressed as appropriate in this opinion.

tively, and also mandated the reinstatement of cases dismissed correctly under *Lampf.*

Andersen argues that § 27A as a whole violates the separation of powers by mandating a particular judicial ruling or "rule of decision" in a limited set of previously-existing cases without enacting a generally applicable or prospective change in law. It argues further that § 27A(b), which provides that cases dismissed under *Lampf* "shall be reinstated" in the event of timely motions by plaintiffs, mandates reversal of previously-adjudicated cases without establishing a generally applicable rule, and accordingly is particularly offensive to separation of powers principles. Andersen maintains that the new statute is invalid under *United States v. Klein,* 80 U.S. (13 Wall.) 128, 20 L.Ed. 519 (1872), which it claims held that Congress may not, without violating the separation of powers, impose a result in pending cases without establishing a generally applicable rule. It also argues that the Ninth Circuit's decision in *Seattle Audubon Society v. Robertson,* 914 F.2d 1311 (9th Cir.1990), *rev'd,* — U.S. ——, 112 S.Ct. 1407, 118 L.Ed.2d 73 (1992) supports its position; however, the Supreme Court's reversal of that opinion (based on a different reading of the statute in question, and without reaching the Ninth Circuit's interpretation of *Klein*) undercuts this point.

There is considerable dispute, both between the parties and among other courts and commentators, as to how broadly *Klein* is to be read. The exact scope of *Klein* need not be resolved, however, because even under Andersen's broad reading, *Klein* is not applicable where the legislation under review establishes a new and generally applicable rule. Andersen's premise that § 27A fails to accomplish such a change is incorrect.

■ Simply put, § 27A changes the law governing time bars of § 10(b) cases filed on or before June 19, 1991. Section 27A exhibits the central characteristic of legislation, as opposed to adjudication.[2] Before Congress adopted § 27A, *Lampf* dictated a uniform and retroactively-applicable limitations period of one year from the date of discovery of the alleged fraud with a maximum date of repose of three years from the alleged fraud. After Congress acted, the § 10(b) limitations period remained at one year from discovery with a three year cap for cases filed after *Lampf,* but was changed to the period prevailing in each jurisdiction for cases filed before that decision. In this Circuit, where a one year/ three year period had recently been adopted but held not to apply retroactively, the applicable period often, as in this case, was the six year period borrowed from New York state law. It is beyond question that the six-year term established for this and similar cases by § 27A differs from the previous one year/three year term.

Beyond possessing the hallmarks of legislation, § 27A lacks those of adjudication. It does not refer to this or any other case by name, nor does it dictate specific findings of fact or conclusions of law in any case. Plaintiffs in each case within the scope of § 27A must demonstrate that their case was timely filed under the law of the jurisdiction in which the case was brought as it existed on June 19, 1991, and the court in each such case is free to determine whether or not the plaintiff has made the required showing. Notably absent from § 27A, unlike the statute held unconstitutional in *Klein,* is a specific directive as to what evidence a court may consider in determining the timeliness of the suit's filing or the case's merits.

The fact that § 27A only governs § 10(b) cases filed on or before June 19, 1991, rather than all § 10(b) cases, does not render it invalid. As noted above, there is no dispute that Congress has the power to adopt new statutes of limitation that apply retroactively as well as prospectively. The passage of § 27A simply reflects Congressional acquiescence (at least for the time being) to prospective application of the new

---

**2.** It is true that the Supreme Court's decision in *Lampf* changed the rule just as much. Nevertheless, changing a statute of limitations is at heart a legislative task, with the Supreme Court's action in *Lampf* possible only in the absence of a statutory limitations period.

uniform period pursuant to *Lampf* but a decision to modify the perceived unfair retroactive application of *Lampf*. Because Congress could have amended the entire limitations period by affirmatively adopting a one year/three year period for cases filed after June 20, 1991 and the previous period for cases filed before then, it surely could reach the same result through the approach it actually took.[3]

Andersen argues that although the statute does not specify particular cases at which it is aimed, it in fact was intended by Congress to pinpoint a few high-profile securities fraud defendants whom it perceived to receive a windfall under *Lampf*. This argument is belied by § 27A's applicability to a generally identified set of cases, and by the fact that courts applying § 27A still are required, and able, to exercise the normal judicial functions of evaluating the facts of each case and construing the applicable law, in this case, whatever law applied on or before June 19, 1991.

 Moreover, as a general rule, courts decline to inquire into Congressional intent in adopting any facially valid legislation. *See United States v. O'Brien*, 391 U.S. 367, 383, 88 S.Ct. 1673, 1682, 20 L.Ed.2d 672 (1968) ("[T]his court will not strike down an otherwise constitutional statute on the basis of an alleged illicit legislative motive ..."). In any event, the mere fact that legislation reaches even a very few cases that existed at the time of enactment and were intended to be influenced by the legislation does not render the legislation an unconstitutional "rule of decision" under *Klein*. *See Robertson v. Seattle Audubon Soc.*, — U.S. —, 112 S.Ct. 1407, 118 L.Ed.2d 73 (1992) (statute's reference to two pending cases primarily affected by statute "served only to identify the five 'statutory requirements that are the basis for' those cases," and was permissible under *Klein* as tool for defining provision's effect on existing law).

*Seattle Audubon* also negates Andersen's objection that the statute imposes a "rule of decision" on courts in violation of *Klein*. As the Supreme Court observed in rejecting the same objection to a statute by which Congress "direct[ed]" that governmental conformity with two identified statutory provisions would satisfy all "statutory requirements that are the basis for" two specified cases,

> A statutory directive binds *both* the executive officials who administer the statute *and* the judges who apply it in particular cases—even if (as is usually the case) Congress fails to preface its directive with an empty phrase like "Congress ... directs that." Here, we fail to see how inclusion of the "Congress ... directs that" preface undermines our conclusion that what Congress directed—to agencies and courts alike—was a change in law, not specific results under old law.

*Seattle Audubon*, — U.S. at —, 112 S.Ct. at 1414 (emphasis in original). Similarly, the statute's use of the imperative voice in directing that the limitations period in pre-*Lampf* cases "shall be" the pre-*Lampf* period does not render the statute invalid, but rather states a change in law such that cases within the statute's ambit are now governed by a new standard to replace the one adopted in *Lampf*.

### B. Section 27A(b)

Andersen's second, and stronger, objection is that § 27A(b) is unconstitutional because it revives "dead," that is, previously adjudicated, cases, and thereby constitutes impermissible legislative reversal of adjudications that accorded with the law that applied at the time of decision. Andersen in oral argument has argued that the revival of Johnson's case against it also would deprive it of due process rights to the benefit of the earlier final judgment it had obtained.

 There is no dispute that § 27A requires the reinstatement of cases, like this one, which were dismissed pursuant to

---

**3.** Andersen's argument that § 27A is an impermissible interference with the Supreme Court's opinion in *Jim Beam, supra,* does not stand because of our conclusion that § 27A establish-

es a new, independent rule, rather than merely reversing a past adjudication, be it *Jim Beam* or any case dismissed through retroactive application of *Lampf*.

*Lampf* and as to which the time for appeal or motion for relief from judgment had expired before Congress enacted § 27A. If § 27A were a simple legislative reversal of previously-decided cases, it could not stand; it has long been established that "no decision of any court of the United States can, under any circumstances, in our opinion, agreeable to the Constitution, be liable to a reversion, or even suspension, by the Legislature itself, in whom no judicial power of any kind appears to be vested." *Hayburn's Case*, 2 U.S. (2 Dall.) 409, 413, n. 3, 1 L.Ed. 436 (1792) (decision of Circuit Court for District of North Carolina, reported with decisions of other Circuits in case not decided by Supreme Court because question was resolved by new legislation while case was pending before Court).

However, the statute does not simply reverse decided cases. Section 27A, as discussed above, imposes a new statute of limitations for cases filed on or before June 19, 1991 of whatever the applicable period was in the jurisdiction in which those cases were filed, rather than the period established by *Lampf.* The relevant question therefore is whether decisions entered pursuant to *Lampf* and before enactment of the statute preclude the application of § 27A to those cases.

Neither case law nor separation of powers principles mandates such a preclusive effect. The sole case on point comes from the Court of Appeals of New York, and is persuasive if not binding authority. *Hymowitz v. Eli Lilly and Co.*, 539 N.E.2d 1069, 541 N.Y.S.2d 941, 73 N.Y.2d 487 (1989), *cert. denied*, 493 U.S. 944, 110 S.Ct. 350, 107 L.Ed.2d 338, rejected a federal due process challenge [4] to a New York statute changing the limitations period for toxic exposure tort cases from a period beginning with the date of plaintiff's exposure to the toxic substance to a period beginning with plaintiff's date of discovery of injuries resulting from such injuries. The new statute provided a one-year "window" period during which claims time-barred as of the date of passage or previously dismissed solely on timeliness grounds could be re-filed. L.1986, § 4, cl. 683, eff. Jul. 30, 1986. The New York Court of Appeals held that "the Legislature may constitutionally revive a personal cause of action where the circumstances are exceptional and are such as to satisfy the court that serious injustice would result to plaintiffs not guilty of any fault if the intention of the Legislature were not effectuated." 73 N.Y.2d at 514, 541 N.Y.S.2d at 951, 539 N.E.2d at 1079. Under that standard, the Court upheld the statute.

No consensus has emerged from the numerous federal courts now confronted with the question of § 27A's constitutionality. A small number of earlier cases address similar, but not identical, questions, and offer limited guidance.

The Supreme Court has affirmed Congress' power to waive the government's res judicata defense and authorize relitigation of an Indian tribe's claim that had previously been rejected by the Court of Claims. *See United States v. Sioux Nation of Indians*, 448 U.S. 371, 100 S.Ct. 2716, 65 L.Ed.2d 844 (1980). However, the Court's decision hinged on its conclusion that the statute merely operated as a waiver of an available defense by an interested party in the litigation. 448 U.S. at 397, 100 S.Ct. at 2731. This theory limits the case's applicability to the present dispute, but nevertheless *Sioux Nation* establishes that in some instances Congress can authorize relitigation of decided claims.

As to legislation authorizing the reopening of litigation among private parties, Johnson (and the New York Court of Appeals in *Hymowitz*) relies on *Chase Securities Corp. v. Donaldson*, 325 U.S. 304, 65 S.Ct. 1137, 89 L.Ed. 1628 (1945), in which the Supreme Court rejected a due process challenge to application of newly-adopted legislation liberalizing the statute of limitations in a case which the Minnesota Supreme Court had concluded was time-barred as to most claims. However, the

---

**4.** No separation of powers arguments were considered in *Hymowitz,* possibly because no federal courts were involved.

claims held to have been time-barred had not been dismissed at the time of the new statute's adoption, and accordingly the Court had no cause to comment on separation of powers implications of reopening previously adjudicated cases.[5]

The cases which most support Andersen's position address the so-called "vested rights" doctrine, *see Georgia Ass'n of Retarded Citizens v. McDaniel*, 855 F.2d 805, 810 (11th Cir.1988), *cert. denied*, 490 U.S. 1090, 109 S.Ct. 2431, 104 L.Ed.2d 988 (1989), which establishes that "It is not within the power of the legislature to take away rights which have been once vested by judgment." *Id.* (quoting *McCullough v. Virginia*, 172 U.S. 102, 123, 19 S.Ct. 134, 142, 43 L.Ed. 382 (1898)). This doctrine rests on twin constitutional bases, one that a final judgment affords the parties rights that may be equated to a form of property enjoying due process protection, and the second that separation of powers principles preclude legislative reopening of adjudicated cases. *Id.*

The vested rights doctrine, however, is limited where changed circumstances alter the preclusive effect of a prior judgment. *See Georgia Ass'n of Retarded Citizens*, 855 F.2d at 811. As one commentator has put it, "Sometimes a statutory change or constitutional amendment creates a new cause of action or a new procedure for enforcing a right, or authorizes an additional means of executing a judgment, and to that extent diminishes the conclusive effect of a prior judgment or decree. Whether or not a particular statute makes the conclusive effect of prior judgments inapplicable to later suits depends on legislative intent." 1B *Moore's Federal Practice* ¶ 0.415 at 511 (1984) (quoted in *Georgia Ass'n of Retarded Citizens*, 855 F.2d at 811).

■ In the present circumstances, several factors demonstrate the compatibility of § 27A(b) with both due process and separation of powers requirements, and establish the non-applicability of the vested rights doctrine, or the compatibility of this case with the "changed circumstances" exception to that doctrine.

First, the seeming finality of the judgment is rendered less certain by the short time that passed between its execution and passage of § 27A, particularly in light of the provision of Rule 60(b), Fed.R.Civ.P., that "the court may relieve a party ... from a final judgment [for] ... (6) any other reason justifying relief from the operation of the judgment" where a motion is made "within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment...." Even if the theoretical possibility of a Rule 60(b) motion cannot in all cases preclude the vesting of due process rights in a decision, *see Tonya K. v. Board of Education*, 847 F.2d 1243, 1248 (7th Cir.1988) (dicta), here the motion was plainly brought within the "reasonable time" contemplated by the Rule, particularly in light of the provision that relief could be granted up to a year after the initial dismissal for nonapplicable specified reasons. This tenuousness of Anderson's claim to finality of judgment calls into question whether the prior adjudication in Andersen's favor created the type of vested rights protected by due process under the vested rights doctrine, as well as whether legislation disturbing the judgment threatens the necessary independence of the judiciary.

Second, the artificiality and technicality of the sole reason for dismissal of the initial case, which had nothing to do with its merits—that is, the new limitations period established by *Lampf*—militates in favor of allowing relief. While a dismissal on statute of limitations grounds technically is a final adjudication on the merits, the Supreme Court has noted that the timeliness defense is not a " 'fundamental' right

---

**5.** *Chase Securities* reaffirmed the vitality of *Campbell v. Holt*, 115 U.S. 620, 6 S.Ct. 209, 29 L.Ed. 483 (1885), which it described as holding that "a state legislature, consistently with the Fourteenth Amendment, may repeal or extend a statute of limitations, even after right of action is barred thereby, restore to plaintiff his reme- dy, and divest the defendant of the statutory bar." 325 U.S. at 311–12, 65 S.Ct. at 1140–41. Again, however, because *Campbell v. Holt* involved a claim which was never brought under the earlier-applicable statute of limitations, it does not address the separation of powers implications of vacating a prior adjudication.

... of the individual," and that "the history of pleas of limitation shows them to be good only by legislative grace and to be subject to a relatively large degree of legislative control." *Chase Securities Corp. v. Donaldson*, 325 U.S. 304, 314, 65 S.Ct. 1137, 1142, 89 L.Ed. 1628 (1945). Legislation to alter such a technical defense, and its application even to dismissed cases, goes far less to the heart of the judicial function than would a legislative attempt to reverse adjudications which had addressed the true merits of the disputes in question. Moreover, in view of the history of changing limitations periods in this case, Andersen in no way could have acted in reliance on the new legal defense afforded it by *Lampf*, which diminishes the force of its due process objection; in fact § 27A merely counteracts a windfall that *Lampf* provided Andersen. Andersen was in the midst of defending this suit on the merits when *Lampf* unexpectedly, and well into the course of the dispute, shortened the applicable limitations period.

Third, an opposite result would be too arbitrary and burdensome to plaintiffs whose cases had been dismissed before Congress adopted § 27A. It would produce the result that plaintiffs whose cases were not dismissed under *Lampf* before Congress acted, whether due to defendants' slowness in moving for such relief, or individual courts' inability to address motions to dismiss promptly, or those courts' determination to delay decision pending Congressional action or further developments from the Supreme Court or their respective Circuits, would have their claims protected by § 27A, while those plaintiffs whose indistinguishable claims had been dismissed promptly were forever barred.

Moreover, to the extent that, as Moore states, legislative intent determines the applicability of the "changed circumstances" exception to vested rights doctrine, the express terms of § 27A(b) establish Congress' intent to void the preclusive effect of prior adjudications under *Lampf*. Con-

gress' explicit intent strongly supports the conclusion that the new limitations period established by § 27A is a changed circumstance vitiating any vested rights Andersen may have in the earlier adjudication under then-prevailing law.

Finally, Congress did not single out and reverse decided cases contrary to its predilections. Rather, it provided relief for a broadly defined class of claimants from what it deemed to be an unfair rule, and it did so without regard to whether or not those claimants' cases had yet been adjudicated pursuant to the new rule of *Lampf*. Such evenhanded treatment is less threatening to the judiciary's independence than would be Congressional action to reverse particular adjudications.

For these reasons, reinstatement of Johnson's § 10(b) claim is consistent with separation of powers and due process requirements, and is hereby ordered.

### III.

■ There remains the question whether to reinstate Johnson's related state law claims, which were dismissed when the dismissal of its § 10(b) claim destroyed the basis for pendent jurisdiction over the state law claims. The factors identified in *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966), all support reinstatement: the § 10(b) claim has been restored and affords federal subject matter jurisdiction, the state and federal claims derive from a common nucleus of operative fact, and considerations of judicial economy and fairness to the parties all weigh heavily in favor of reinstatement so that the dispute can be resolved in one forum. Accordingly, the state law claims contained in Johnson's complaint are reinstated and the dismissal of those claims is vacated.[6]

### IV.

Since § 27A is consistent with constitutional separation of powers principles,

---

**6.** Andersen objects to what it terms Johnson's request for a stay of state court proceedings. All Johnson has moved for is reinstatement of

dismissed state claims. Accordingly, this opinion does not address the question of a stay.

Johnson's § 10(b) claim is reinstated pursuant to that statute. The earlier dismissal of Johnson's pendent state claims is vacated and the claims reinstated.

It is so ordered.