**Sheldon RABIN, on his own and on behalf of all others similarly situated, Plaintiff,**

v.

**FIVZAR ASSOCIATES, BPSC Corporation, Integrated Resources Equity Corporation, First Nationwide Bank (c/o FNS Corporate Funding, Inc.), Gaincred II Corp., Gaincred III Corp. and Bach Associates, Inc., Defendants.**

No. 90 Civ. 4869 (RWS).

United States District Court, S.D. New York.

July 10, 1992.

---

1046

Beigel & Sandler, Ltd., New York City (Bijan Amini, Elizabeth M. Toll, of counsel), for plaintiff Sheldon Rabin.

Anderson Kill Olick & Oshinsky, P.C., 666 Third Avenue, New York City (Steven M. Pesner, Robert H. Pees, of counsel), for defendant Fivzar Associates.

Rogers & Wells, New York City (Jonathan M. Herman, of counsel), for defendants BPSC Corp., Integrated Resources Equity Corp., Gaincred II Corp. and Gaincred III Corp.

Liddell, Sapp, Zivley, Hill & Laboon, Dallas, Tex. (David Brown, of counsel), for defendant Bach & Associates, Inc.

Donovan Leisure Newton & Irvine, New York City (James L. Stengel, of counsel), for First Nationwide Bank.

OPINION

SWEET, District Judge.

Plaintiff Sheldon Rabin ("Rabin") has moved for an order pursuant to § 476 of the Federal Deposit Insurance Corporation Improvement Act of 1991, Pub.L. No. 102–242, 105 Stat. 2236 (codified at § 27A of the Securities and Exchange Act of 1934, 15 U.S.C. § 78aa–1), reinstating his claims under § 10(b) of the Securities and Exchange Act of 1934 ("§ 10(b)") against the defendants in this action.[1] For the following reasons, the motion is granted.

BACKGROUND

Rabin, a resident of Great Neck, New York filed this suit on July 23, 1990, alleging claims under § 10(b) and state law (the "Complaint"). Rabin's claims arose out of his investment in a limited partnership known as BP Associates Limited Partnership ("BP Associates"), which was organized in 1985 to acquire, improve, own, operate and eventually sell the BP Shopping Center. Rabin purchased his limited partnership interests in BP Associates some time in 1986, allegedly in reliance on certain allegedly fraudulent Offering Materials prepared, issued, distributed and communicated by the defendants. The complaint was subsequently amended and served on October 24, 1990 (the "Amended Complaint").

In December of 1990 the defendants moved to dismiss the Amended Complaint contending, among other things, that the § 10(b) claims were time-barred under *Ceres Partners v. GEL Associates*, 918 F.2d 349 (2d Cir.1990). In light of the Supreme Court's June 20, 1991 decision in *Lampf, Plevis, Lipkind, Prupis & Petigrow v. Gilbertson*, —— U.S. ——, 111 S.Ct. 2773, 115 L.Ed.2d 321, *reh. denied*, —— U.S. ——, 112 S.Ct. 27, 115 L.Ed.2d 1109 (1991), on July 2, 1991, this court denied the motion to dismiss as well as Rabin's motion for class certification with leave to renew

based on *Lampf*. On July 10 and 12, 1991, the Defendants renewed their motion. By request of the parties, decision on the motion was deferred pending rehearing of the *Lampf* decision, and, on October 3, 1991, this court dismissed the § 10(b) claims as time-barred under *Lampf*'s one-year/three-year uniform federal statute of limitations for § 10(b) actions, which was made retroactive by *James B. Beam Distilling Co. v. Georgia*, —— U.S. ——, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991) (hereinafter *"Beam"*). Final judgment was entered on January 15, 1992.

On December 19, 1991, President Bush signed into law § 476 of the Federal Deposit Insurance Corporation Improvement Act of 1991, Pub.L. No. 102–242, 105 Stat. 2236 (codified at § 27A of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa–1), which proscribed *pro forma* retroactive application of the *Lampf* rule. New section 27A provides that:

(a) EFFECT ON PENDING CAUSES OF ACTION—The limitation period for any private action implied under section 10(b) of this Act that was commenced on or before June 19, 1991, shall be the limitation period provided by the laws applicable in the jurisdiction, including principles of retroactivity, as such laws existed on June 19, 1991.

(b) EFFECT ON DISMISSED CAUSES OF ACTION—Any private civil action implied under section 10(b) of this Act that was commenced on or before June 19, 1991—

(1) which was dismissed as time barred subsequent to June 19, 1991, and

(2) which would have been timely filed under the limitation period provided by the laws applicable in the jurisdiction, including principles of retroactivity, as such laws existed on June 19, 1991,

shall be reinstated on motion by the plaintiff no later than 60 days after the date of enactment of this section.

---

1. Defendant First Nationwide Bank has informed the court that it has entered into settlement agreements with Rabin and the seven individuals in the purported class he represents. The settlement agreements provide that each of the investors releases First Nationwide Bank from all claims arising out of their limited partnership investments. *See* Letter from James L. Stengel of Donovan Leisure Newton & Irvine to Hon. Robert W. Sweet (Apr. 16, 1992). Thus, the claims against First Nationwide Bank are deemed dismissed.

Rabin now moves pursuant to § 27A(b) for reinstatement of his § 10(b) claims. The Defendants oppose the motion on the grounds that (1) Rabin's claims are untimely even under the law as it existed in this Circuit on June 19, 1991 and (2) § 27A is unconstitutional because it violates separation of powers principles and the due process clause of the Fifth Amendment. Oral argument was heard on April 15, 1992. The parties made further submissions, the last of which was received on June 2, 1992. On June 24, 1992, pursuant to 28 U.S.C. § 2304, the court notified the United States Attorney General that the constitutionality of § 27A was under challenge advised it of its right to intervene.[2]

DISCUSSION

1. *Timeliness of Rabin's § 10(b) Claims Under § 27A*

A federal court is not to decide constitutional questions unnecessarily. *See, e.g., Jean v. Nelson,* 472 U.S. 846, 854, 105 S.Ct. 2992, 2997, 86 L.Ed.2d 664 (1985) (" 'Prior to reaching any constitutional questions, federal courts must consider nonconstitutional grounds for decision.' " (citations omitted)). Thus, before reaching the defendants' constitutional challenge, it must first be determined whether Rabin's § 10(b) claims were timely filed under the statute of limitations applicable under § 27A(b).

There is no dispute that Rabin has established three of the four elements necessary for reinstatement pursuant to § 27A(b): he filed this action prior to June 19, 1991; his claims were dismissed as time-barred subsequent to June 19, 1991; and he brought his motion to reinstate on February 3, 1991, within 60 days of the enactment of § 27A on December 19, 1991.

The defendants contend, however, that Rabin's § 10(b) claims would not have been timely under "the limitation period provided by the laws applicable in the jurisdiction, including principles of retroactivity, as such laws existed on June 19, 1991." There is no dispute that "the jurisdiction" to which the court must look for the applicable law in this case is the Second Circuit.

On June 19, 1991, the statute of limitations for § 10(b) claims within this jurisdiction was the one-year/three-year period established in *Ceres Partners v. GEL Associates,* 918 F.2d 349 (2d Cir.1990) "applied sparingly in light of the retroactivity principles enunciated in *Welch* [*v. Cadre Capital,* 923 F.2d 989 (2d Cir.1991) ("*Welch I*"), *vacated and remanded sub nom., Northwest Savs. Bank PaSa v. Welch,* —— U.S. ——, 111 S.Ct. 2882, 115 L.Ed.2d 1048 *aff'd,* 946 F.2d 185 (2d Cir.1991) ("*Welch II*") ]." *Henley v. Slone,* 961 F.2d 23, 26 (2d Cir.1992).

In *Ceres,* the Second Circuit followed the Third and Seventh Circuits in adopting a uniform statute of limitations for § 10(b) actions of one year after the discovery of the alleged fraud and three years after the occurrence of the alleged conduct. *Ceres,* 918 F.2d at 359 (following *Short v. Belleville Shoe Mfg. Co.,* 908 F.2d 1385 (7th Cir.1990); *In re Data Access Sys. Secs. Litig.,* 843 F.2d 1537 (3d Cir.) (*en banc*), *cert. denied,* 488 U.S. 849, 109 S.Ct. 131, 102 L.Ed.2d 103 (1988)). The court thereby broke from its longstanding practice of applying the forum state's most analogous state statute of limitations, including so-called "borrowing statutes," to claims under § 10(b). *See, e.g., Armstrong v. McAlpin,* 699 F.2d 79, 86–87 (2d Cir.1983); *Stull v. Bayard,* 561 F.2d 429, 431–32 (2d Cir. 1977), *cert. denied,* 434 U.S. 1035, 98 S.Ct. 769, 54 L.Ed.2d 783 (1978); *Arneil v. Ramsey,* 550 F.2d 774 (2d Cir.1977). Although the *Ceres* court left for the future the question of whether its rule was to have retroactive effect, *see id.* at 364, the Second Circuit soon dispelled any suspense about the matter in *Welch v. Cadre Capital,* 923 F.2d 989 (2d Cir.) ("*Welch I*"), *vacated and remanded sub nom., Northwest Savs. Bank, PaSa v. Welch,* —— U.S. ——, 111 S.Ct. 2882, 115 L.Ed.2d 1048 *aff'd,* 946 F.2d 185 (2d Cir.1991). After conducting the three-part test set forth in *Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), the *Welch I* court held that the limitations period established in

**2.** As of this writing, the Attorney General has not responded to this notification.

*Ceres* did not apply retroactively to the case before it.

The effect of *Welch I,* therefore, was to establish that the retroactive application of *Ceres* must be determined on a case-by-case basis according to the *Chevron* test. *See Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb Inc.,* 967 F.2d 742, 751–52 (2d Cir.1992); *Grondahl v. Merritt & Harriss, Inc.,* 964 F.2d 1290, 1292 (2d Cir.1992); *Henley,* 961 F.2d at 25–26.[3]  If retroactive application is denied, the court returns to the Second Circuit's prior practice of applying the most analogous state statute of limitations.

Because Rabin commenced this action prior to *Ceres,* a determination of the retroactivity question is necessary.  To qualify for purely prospective application under the *Chevron/Welch I* test, *Ceres* " 'must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, ... or by deciding an issue of first impression whose resolution was not clearly foreshadowed.'  A court should then 'weigh' whether retroactive application would conflict with the purposes of the rule and whether it would produce inequitable results." *Welch I,* 923 F.2d at 993 (quoting *Chevron,* 404 U.S. at 106–07, 92 S.Ct. at 355).  Satisfaction of only the first element is mandatory.  "If the proponent of nonretroactivity clears the first hurdle, the court then proceeds to the 'balancing process demanded by the second and third factors.' " *Id.* at 994 (quoting *Kremer v. Chemical Contr. Corp.,* 623 F.2d 786, 789 (2d Cir.1980), *aff'd on other grounds,* 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982)).

There is no dispute that *Ceres* overrules well-established Second Circuit precedent under which, in this case, New York's two-year/six-year statute of limitations for fraud would have applied.  *See Armstrong v. McAlpin,* 699 F.2d 79, 87 (2d Cir.1983); N.Y.Civ.Prac.L. & R. §§ 203(f), 213(8).  Nevertheless, the defendants contend that the one-year/three-year limitation established in *Ceres* was "clearly foreshadowed" in July of 1990 when Rabin filed the Complaint by the ruling in *Data Access* and speculation by two district courts within this circuit that the Court of Appeals would follow the Third Circuit.  *See Welch v. Cadre Capital,* 735 F.Supp. 467, 477 (D.Conn.1989) ("this court believes that the Second Circuit will adopt the reasoning and conclusions enunciated by the *Data Access* court"), *rev'd,* 923 F.2d 989 (2d Cir.), *vacated and remanded sub nom. Northwest Sav. Bank, PaSa v. Welch,* —— U.S. ——, 111 S.Ct. 2882, 115 L.Ed.2d 1048 *aff'd,* 946 F.2d 185 (2d Cir.1991); *Bernstein v. Crazy Eddie, Inc.,* 702 F.Supp. 962, 981 (E.D.N.Y. 1988) ("This court ... believes it highly likely that the Second Circuit will follow [the Third Circuit]."), *vacated on other grounds,* 714 F.Supp. 1285 (2d Cir.1989).  In addition, the issue was pending on appeal before the Seventh Circuit in *Belleville Shoe.*

This argument is unpersuasive in light of the Second Circuit's indication in *Henley* that *Welch I* is essentially dispositive on the first *Chevron* prong, leaving only the equitable factors to be considered in determining the retroactivity question.  *See Henley,* 961 F.2d at 26 (law on June 19, 1991 is *Ceres* "applied sparingly in light of the retroactivity principles enunciated in *Welch I; if it would be inequitable under Welch I to apply Ceres Partners to Henley's suit, then the more generous limitations period of prior state law applies*" (emphasis added)).[4]  Moreover, even if it

---

**3.**  These Second Circuit decisions negate the suggestion, advanced by Rabin, that *Welch I* held against the retroactivity of *Ceres* as a matter of law thus obviating the need for conducting a *Chevron* analysis in each case.  Nevertheless, it is noteworthy that the Second Circuit has indicated that *Ceres* should be applied retroactively only "sparingly."  *See Henley,* 961 F.2d at 26.

**4.**  The defendants do make the valid point, however, that whether a change in law is "clearly foreshadowed" is a question whose answer will vary over time as new decisions are announced.  Nevertheless, after *Welch I* and *Henley,* it seems that this analysis would more properly be conducted under the third, equitable prong, of the *Chevron Test* as a question of whether the parties justifiably relied on the prevailing rule.  However, because in this case the change in rule was not "clearly foreshadowed" when Rabin filed the Complaint, further consideration of

were proper to consider this factor, it would resolve in favor of nonretroactivity. Although the defendants' arguments may establish that law was *uncertain* at the time Rabin filed the Complaint, such uncertainty is not tantamount to a "clear" indication that the law in this jurisdiction would change.

Analysis of the second *Chevron* factor also counsels against retroactive application of *Ceres* in this case. As the *Welch I* court reasoned, the dominant purpose of statutes of limitation is to give potential litigants prior notice of their rights. In *Welch I*, as in this case, the limitations period established in *Ceres* would have already expired when *Ceres* announced. Thus, application of the *Ceres* statute of limitations would not serve the purpose of the rule since none of the parties were on notice of its rights at the time the limitations period expired. *Welch I*, 923 F.2d at 994–95.

Finally, the balance of the equities favors nonretroactivity, notwithstanding defendants' argument that several factors present here distinguish this case from *Welch I.*

First, the defendants contend that because this case was brought as a potential class action, Rabin could not justifiably have relied on application of New York's two-year/six-year statute of limitations since the limitations periods of approximately twenty-six states would have been applied to the claims of nonresidents through the operation of New York's borrowing statute. This argument is a smokescreen: regardless of the possibility that various statutes of limitation might have applied, this fact does not compromise the justifiability of Rabin's expectation that the two-year/six-year period would apply to *his* claims as class representative.

Second, the defendants maintain that Rabin's failure to allege that the timing of his suit was due to the defendants' fraudulent concealment distinguishes this case from *Welch I.* Nevertheless, the defendants have not established when Rabin discovered the alleged fraud and have not alleged that he delayed filing suit after such discovery as a result of "procedural maneuvering designed to achieve a tactical advantage." *Welch I*, 923 F.2d at 995. *Compare Varnberg v. Minnick*, 760 F.Supp. 315, 328 (S.D.N.Y.1991) (court had facts before it establishing date of discovery). Thus, as other courts have held, it "would be unfair [to now apply a new and shorter limitations period] because retroactive application would not prompt a past plaintiff into timely filing after the fact, and could constitute an unjust penalty for rightful reliance on existing law." *Gutman v. Equidyne Extractive Indus.*, 769 F.Supp. 121, 125 (S.D.N.Y.1991).[5]

The applicable pre-*Ceres* statute of limitations is found in N.Y.Civ.Prac.L. & R. § 213(8), which provides that an action based upon fraud must be commenced within six years of the commission of the fraud or two years from the discovery of the fraud, whichever is later. N.Y.Civ. Prac.L. & R. §§ 203(f), 213(8); *Armstrong*, 699 F.2d at 87.[6] Therefore, because Rabin commenced this action approximately four

this question elsewhere in the retroactivity analysis is unnecessary.

5. The defendants also assert that the equities balance in favor of retroactivity because Rabin engaged in forum shopping. This allegation is completely unsubstantiated by anything more than generic rhetoric on the evils of forum shopping. Absent any individualized proof, consideration of this factor would fly in the face of the rule that the equities be weighed according to the facts of each case.

6. Section 213(8) is applicable to New York residents. Were Rabin a nonresident of New York State, the court would look to New York's "borrowing statute," N.Y.Civ.Prac.L. & R. 202. Section 202 provides in relevant part that:

An action based upon a cause of action accruing *without the state cannot be commenced* after the expiration of the time limited by the laws of either the state or the place without the state where the cause of action accrued. The cause of action "accrues" where " 'its economic impact is felt, normally the plaintiff's residence.' " *Arneil*, 550 F.2d at 779 (citation omitted); *see also Armstrong*, 699 F.2d at 89; *Landy v. Mitchell Petroleum Tech. Corp.*, 734 F.Supp. 608, 618 (S.D.N.Y.1990). Thus, if a plaintiff's § 10(b) action would be time-barred if brought in the place of his residence, the suit in a New York federal court is time-barred. *Ceres*, 918 F.2d at 353; *Ahmed v. Trupin*, 781 F.Supp. 1017 (S.D.N.Y.1992).

years after he purchased his limited partnership interests, his § 10(b) claims would have been timely filed under the law as it existed in this Circuit on June 19, 1991. Having reached this conclusion, the constitutionality of § 27A must now be addressed.

## 2. Constitutionality of § 27A

The defendants attack the constitutionality of § 27A as violative of separation of powers principles and Fifth Amendment due process: First, they contend that § 27A violates separation of powers principles on the grounds (1) that it prescribes a rule of decision to be applied in particular cases without amending or repealing the law underlying the litigation, thus usurping the Judiciary's exclusive authority to "say what the law is"; (2) that, even if § 27A does "change" the law, it contravenes *Beams*'s constitutionally grounded proscription against selective prospective application of judicial determinations; and (3) that it subjects final judgments of federal courts to reversal or suspension. Second, they argue that § 27A(b)'s potential impact on final judgments constitutes a taking in violation of the Fifth Amendment's due process clause.[7]

Neither the Second Circuit nor any other Court of Appeals has yet ruled on the constitutionality of § 27A, *but cf. Litton Indus.*, 967 F.2d 742, 751 (noting awareness of issue); *Grondahl*, 964 F.2d 742 (applying § 27A but not addressing constitutional issue); *Henley*, 961 F.2d 23 (deferring resolution of constitutional issue pending district court determination of timeliness under § 27A), and district courts are divided on the question.[8] Within this district, the Honorable Morris E. Lasker and William C. Conner have upheld the constitutionality of the statute against the challenges made by the defendants here. *See Brown v. The Hutton Group*, 795 F.Supp. 1307 (S.D.N.Y.1992) (addressing separation of powers and due process issues); *Adler v. Berg Harmon Assocs.*, 790 F.Supp. 1235 (S.D.N.Y. Apr. 28, 1992) (same); *Axel Johnson, Inc. v. Arthur Andersen & Co.*, 790 F.Supp. 476 (S.D.N.Y.1992) (same). After reviewing the relevant authorities, and mindful that a court must construe a statute in a manner which renders it constitutional if fairly possible, *see, e.g., Communications Workers of Am. v. Beck*, 487 U.S. 735, 762, 108 S.Ct. 2641, 2657, 101 L.Ed.2d 634 (1988), I join in my esteemed colleagues' assessment of § 27A.

### I. Separation of Powers

■ It is axiomatic that "within our political scheme, the separation of govern-

---

**7.** The defendants do not directly address those arguments pertaining to § 27A(b)'s potential effect on final judgments. Nevertheless, they appear to have endorsed the position of district courts finding the statute unconstitutional on that ground by submitting copies of those decisions.

**8.** *Compare, e.g.,* cases holding § 27A unconstitutional: *Dulude v. Cigna Secs., Inc.*, No. 90–CV–72191–DT (E.D.Mich. May 14, 1992) (adopting *Brichard, infra*); *Gray v. First Winthrop Corp.*, No. C–90–2600, slip op. (N.D.Cal. Apr. 16, 1992) (contravenes constitutional decision in *Jim Beam*); *Plaut v. Spendthrift Farm, Inc.*, 789 F.Supp. 231 (E.D.Ky.1992) (directs federal courts to reverse or suspend final judgments); *In re Brichard Secs. Litig.*, 788 F.Supp. 1098 (N.D.Cal.1992) (violates separation of powers principles by prescribing rule of decision in pending cases, by subjecting final judgments of federal courts to reversal or review and by contradicting constitutional decision of Supreme Court); *Bank of Denver v. Southeastern Capital Group, Inc.*, 789 F.Supp. 1092 (D.Colo. Mar. 20, 1992) (prescribes rule of decision in particular cases, encroaches on judiciary's power to interpret the law); *TGX Corp. v. Simmons*, 786 F.Supp. 587 (E.D.La.1992) (minute entry) (although § 27A does change law, statute is unconstitutional because inconsistent with constitutional mandate of *Jim Beam*) *with* cases holding § 27A not unconstitutional: *Brown v. The Hutton Group*, 795 F.Supp. 1307 (S.D.N.Y.1992) (addressing separation of powers, due process and equal protection issues); *Adler v. Berg Harmon Assocs.*, 790 F.Supp. 1235 (S.D.N.Y.1992) (same, but not addressing equal protection issues); *Axel Johnson, Inc. v. Arthur Andersen & Co.*, 790 F.Supp. 476 (S.D.N.Y.1992) (same); *TBG, Inc. v. Bendis*, No. 89–2423–0, 1992 WL 80622 (D.Kan. Mar. 5, 1992) (same; addressing separation of powers issue); *Ayers v. Sutliffe*, No. C–1–90–630, slip op., 1992 WL 100132 (S.D.Oh. Feb. 11, 1992) (same; addressing separation of powers and equal protection issues); *Venturtech II, Ltd. v. Deloitte Haskins & Sells*, 790 F.Supp. 574 (E.D.N.C.1992) (same; addressing separation of powers, due process and equal protection issues).

mental powers into three coordinate Branches is essential to the preservation of liberty." *Mistretta v. United States*, 488 U.S. 361, 380, 109 S.Ct. 647, 658, 102 L.Ed.2d 714 (1989). Under this system, the legislature is to enact laws of general application and the courts are to decide particular cases arising under those laws and to exercise the exclusive authority to "say what the law is." *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803). Conversely stated, "[t]he judicial power cannot legislate, nor can the legislative power act judicially." *Pennsylvania v. Wheeling & Belmont Bridge*, 59 U.S. (18 How.) 421, 441, 15 L.Ed. 435 (1856) (hereinafter *"Wheeling Bridge"*) (McLean, J., dissenting). Where acts of the Legislative Branch prevent the Judicial Branch from accomplishing its constitutionally assigned functions, Congress "passe[s] over the limit which separates the legislative from the judicial power," *United States v. Sioux Nation of Indians*, 448 U.S. 371, 391, 100 S.Ct. 2716, 2729, 65 L.Ed.2d 844 (1980).

Congress usurps the Judiciary's inviolable province to interpret the law where it enacts legislation that "prescribe[s] rules of decision to the Judicial Department of the government in cases pending before it" without changing the substantive or procedural law underlying the litigation, *see United States v. Klein*, 80 U.S. (13 Wall.) 128, 146, 20 L.Ed. 519 (1872), or where it enacts a law that effects such a change but otherwise contravenes the Constitution by, for example, subjecting final judgments of the federal courts to reversal or suspension or contravening a constitutional decision of the Supreme Court. *See, e.g., In re Brichard Secs. Litig.*, 788 F.Supp. 1098, 1102 (N.D.Cal. Mar. 27, 1992).

### A.

■ Congress is empowered to enact a statute of limitations as part of a legislative scheme, to amend or repeal any law, even for the purpose of affecting pending litigation or overruling a prior judicial decision, *See Georgia Ass'n of Retarded Citizens v. McDaniel*, 855 F.2d 805, 813 (11th Cir.1988), *reh. denied*, 866 F.2d 1420 (en banc), *cert. denied*, 490 U.S. 1090, 109 S.Ct.

2431, 104 L.Ed.2d 988 (1989); *Wheeling Bridge*, 59 U.S. (18 How.) 421, 15 L.Ed. 435; *United States v. The Schooner Peggy*, 5 U.S. (1 Cranch) 103, 108–10, 2 L.Ed. 49 (1801), and to apply such provisions retroactively as well as prospectively. Nevertheless, the defendants argue that § 27A does not change § 10(b) but rather directs the application of a rule of decision in a particular class of cases, which constitutes an act of adjudication by the legislature. *See Klein*, 80 U.S. (13 Wall.) at 146–47.

This is no easy distinction. Despite the now substantial number of district courts (on both sides of the coin) that have addressed this argument, the characteristics of an impermissible act of legislative law-*interpreting* as contrasted to those of permissible legislative law*making* have yet to be defined. Despite the implicit, and sometimes explicit, representation by these courts that comparison of *United States v. Klein*, 80 U.S. (13 Wall.) 128 and *Pennsylvania v. Wheeling & Belmont Bridge Co.*, 59 U.S. (18 How.) 421, clearly elucidates the distinction, consulting these cases in fact provides little, if any, assistance.

*Klein* is the "seminal case." The administrator of a deceased Confederate sympathizer brought suit in the Court of Claims to obtain the proceeds of property that had been seized and sold by the Government during the Civil War. A federal statute allowed for such recovery upon proof of the claimant's loyalty during the war. In an earlier case, the Supreme Court had ruled that the grant of a presidential pardon to ex-Confederate property owners was "proof of loyalty" sufficient to satisfy the statute. Klein had received such a pardon, and thus the Court of Claims held in his favor under the authority of precedent.

During the pendency of the government's appeal to the Supreme Court, Congress enacted legislation that provided that a presidential pardon was not admissible as evidence of loyalty, that the Supreme Court had no jurisdiction to hear the appeal of any cause in which judgement was rendered in favor of a claimant based on a

pardon and that a presidential pardon was conclusive evidence of disloyalty.

The Court struck down the statute as an unconstitutional violation of the separation of powers, finding that it "prescribe[d] a rule for the decision of the cause in a particular way." *Klein,* 80 U.S. at 146–47.[9] In reaching its decision, the Court distinguished *Wheeling Bridge.* In that case, the Court had previously held a certain bridge to be an illegal obstruction of the river it spanned. Subsequently, Congress passed legislation declaring the bridge to be legal and designating it a post road. The *Klein* Court stated that in *Wheeling Bridge:*

> [n]o arbitrary rule of decision was prescribed ..., but the court was left to apply its ordinary rules to the new circumstances created by the act. In the case before us no new circumstances have been created by legislation. But the court is forbidden to give the effect to evidence which, in its own judgment, such evidence should have, and is directed to give it an effect precisely contrary.

*Id.* at 147.

Notwithstanding the "significan[ce]" others have attached to *Klein'*s distinguishing of *Wheeling Bridge,* the distinction yet remains somewhat illusive. However, the Supreme Court's most recent decision in the separation of powers context, *Robertson v. Seattle Audubon Soc.,* — U.S. ——, 112 S.Ct. 1407, 118 L.Ed.2d 73 (1992), is a bit more instructive. At issue in that case was a subsection of § 318 of the Northwest Timber Compromise (the "Compromise") which provided that management of areas according to the requirements of subsections (b)(3) and (b)(5) "is adequate consideration for the purpose of meeting the statutory requirements that are the basis for" certain identified pending cases. Prior to the enactment of the Compromise, determination of whether the statutes at

issue in the litigations were violated turned on whether the challenged harvesting would "kill" or "take" any migratory birds.

The plaintiffs challenged § 318 on the ground that this subsection (b)(6)(A) violated Article III because it purported to direct the results in two pending cases. On appeal, the Ninth Circuit held the provision unconstitutional because it "does not, by its plain language, repeal or amend the environmental laws underlying this litigation," but rather "directs the court to reach a specific result and make certain factual findings under existing law in connection with two [pending] cases." *Seattle Audubon Soc. v. Robertson,* 914 F.2d 1311, 1316 (9th Cir.1990), *rev'd,* — U.S. ——, 112 S.Ct. 1407, 118 L.Ed.2d 73 (1992).

The Supreme Court reversed. Comparing the standards for violation of the statutes under the former law and under § (b)(6)(A), the Court concluded that:

> "subsection (b)(6)(A) compelled changes in law, not findings or results under old law. Before subsection (b)(6)(A) was enacted, the original claims would fail only if the challenged harvesting violated none of five old provisions. Under subsection (b)(6)(A), by contrast, those same claims would fail if the harvesting violated neither of two new provisions. Moreover, we find nothing in subsection (b)(6)(A) that purported to direct any particular findings of fact or applications of law, old or new, to fact.... Section 318 did not instruct the courts whether any particular timber sales would violate subsections (b)(3) and (b)(5)...."

*Seattle Audubon,* — U.S. at ——, 112 S.Ct. at 1413.

Like the legislation at issue in *Seattle Audubon,* § 27A changed the law governing § 10(b) claims. Prior to the enactment of § 27A, all § 10(b) claims were subject to

---

**9.** Parenthetically, it is debatable whether this pronouncement is actually part of *Klein'*s holding. It seems quite possible that this discussion is *dicta* and that the "better reading of *Klein* is quite narrow and construes the case as holding only that Congress violates the separation of powers when it presumes to dictate 'how the Court should decide an issue of fact under

threat of loss of jurisdiction' and purports 'to bind the Court to decide a case in accordance with a rule of law independently unconstitutional on other grounds." *United States v. Brainer,* 691 F.2d 691, 695 (4th Cir.1982). Nevertheless, because § 27A does change the law, thus satisfying even the broader reading of *Klein,* it is unnecessary to grapple with this question.

the one-year/three-year limitations period established in *Lampf* and made to apply retroactively by *Beam*. Section 27A changed this law by establishing a different limitations period that applies to § 10(b) claims filed on or before June 19, 1991. *See TGX Corp.*, 786 F.Supp. 587, 592. Though the defendants argue that the absence of provision for an *express* statute of limitations applicable retroactively defeats the conclusion that the law has been "changed," neither they nor any of the cases they cite supply a rationale for holding that a change to a rule that finds its substance in the laws of the circuits is any less a change than one that proclaims a uniform limitations period.

Moreover, as with the legislation at issue in *Seattle Audubon*, nothing in § 27A purports to direct any particular findings of fact or applications of law to fact. Section 27A does not, for instance, attempt to dictate the sort of factual scenario under which courts must find that "discovery" of the fraud has occurred for purposes of triggering the statute of limitations. Such an act, it seems, *would* be analogous to that which was found to be an impermissible act of legislative adjudication in *Klein*. Rather, § 27A specifies the law to be applied to the relevant cases and leaves to the courts the job of applying that law to the particular facts before them. *See also Adler*, 790 F.Supp. at 1243; *Brown*, 795 F.Supp. at 1314; *Axel Johnson*, 790 F.Supp. at 480.[10]

### B.

Having thus determined that § 27A changed the law, the constitutional inquiry is not at an end. The defendants next challenge the constitutionality of § 27A on the ground that it mandates the selective prospective application of *Lampf*, a practice which they contend the *Beam* Court held to be constitutionally proscribed. However, like Judge Conner and others outside of this circuit, I disagree with the

defendants' characterization of *Beam*'s holding as constitutionally grounded. *See, e.g., Adler*, 790 F.Supp. at 1243–44; *Brown*, 795 F.Supp. at 1314–1315.

In *Beam*, six Justices rejected "selective prospectivity," a practice whereby a court applies a new rule in the case in which it is pronounced and then returns to the old rule with respect to all others arising on facts predating the pronouncement. *Beam*, —— U.S. at ——, 111 S.Ct. at 2448. Despite the concurrence of six Justices in the judgment of the Court, however, no majority was achieved as to the basis for the holding.

Announcing the judgment of the Court, Justice Souter, joined by Justice Stevens, reasoned that "retroactivity is properly seen in the first instance as a matter of choice of law," and that selective prospectivity "breaches the principle that litigants in similar situations should be treated the same, a fundamental component of *stare decisis* and the rule of law generally." *Id.* —— U.S. at ———— ——, 111 S.Ct. at 2243–44. Thus, based on "principles of equality and *stare decisis*," the Souter plurality declared it error to refuse to apply a rule of federal law retroactively after the case announcing the rule has already done so, making explicit that "the grounds for our decision today are narrow. They are confined entirely to an issue of choice of law." *Id.* —— U.S. at ——, 111 S.Ct. at 2448.

Justices Blackmun, Scalia and Marshall, in contrast, based their concurrences on constitutional principles. Specifically, the Blackmun and Scalia pluralities reasoned that selective prospectivity conflicts the dictates of Article III that the courts decide only "cases" and "controversies." *Id.* —— U.S. at ——, 111 S.Ct. at 2449. "Unlike a legislature," Justice Blackmun wrote,

> we do not promulgate new rules "to be applied prospectively only," as the dissent, *post*, at 1, and perhaps the Court would have it. The nature of judicial

---

**10.** This discussion also disposes of the defendants' contention, subtly distinguishable from their *Klein* argument, that § 27A does nothing more than forbid courts to apply *Beam*. Although the *effect* of the statute may be to pre-

clude the application of *Beam* in a given set of cases, as concluded above, § 27A effects a change in the underlying law to be applied in § 10(b) cases.

review constrains us to consider the case that is actually before us, and, if it requires us to announce a new rule, to do so in the context of the case and apply it to the parties who brought us the case to decide. To do otherwise is to warp the role that we, as judges, play in a government of limited powers.

*Id.* — U.S. —, 111 S.Ct. at 2449–50.

Explicitly rejecting the approach taken by the Blackmun and Scalia pluralities, Justice White concurred in the judgment "on the narrower ground employed by Justice Souter." *Id.* — U.S. —, 111 S.Ct. at 2449.

Because only three Justices articulated a constitutional basis for the holding, *Beam* cannot be accorded the status of a "constitutional mandate." *But see, e.g., TGX Corp.*, 786 F.Supp. at 593 (*Beam* opinion states "constitutional mandate"); *In re Brichard Secs. Litig.*, 788 F.Supp. at 1109 (*Beam* is a constitutional decision). The attempts of several courts, and of the defendants here, to read constitutional underpinnings into the opinion of the Souter plurality are unpersuasive given its plain rejection of such a rationale in the face of the Blackmun/Scalia plurality opinions. The defendants also argue that the Souter plurality's opinion is based on principles rooted in Article III notwithstanding its non-constitutional language. The primary support for this argument is the Souter plurality's adoption of *Griffith v. Kentucky*, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987), in which the Court proscribed selective prospectivity in the criminal context based on Article III concerns and "principles of equality." Because Justice Souter invoked only the latter rationale in adopting *Griffith*, his reliance on that case does not translate into reliance on Article III as the grounds of decision.

## II. Section 27A(b)'s Effect on Final Judgments

▮ Defendants also argue that § 27A(b) violates both the separation of powers and Fifth Amendment due process because it directs federal courts to reverse or suspend final judgments. Indeed, under the so-called "vested rights" doctrine, the legislature may not, consistent with Article III and the Fifth Amendment, direct the reversal or suspension of a decision of a federal court, *see Hayburn's Case*, 2 U.S. (2 Dall.) 409 (1792), or take away rights which have been once vested by judgment, *McDaniel*, 855 F.2d at 810–12 (11th Cir. 1988) ("Congress' power to create new causes of action, new legal rights, or impose previously unrecognized duties, does not permit it to disturb a right that vests as the result of a judgment."); *McCullough v. Virginia*, 172 U.S. 102, 123–24, 19 S.Ct. 134, 142, 43 L.Ed. 382 (1898) ("when ... actions have passed into judgment the power of the legislature to disturb the rights created thereby ceases"). However, absent the entry of a final judgment, the dismissal of an action as time-barred does not invest the prevailing party with any property rights, *see Chase Secs. Corp. v. Donaldson*, 325 U.S. 304, 310–16, 65 S.Ct. 1137, 1140–43, 89 L.Ed. 1628 (1945) (where defendant's "statutory immunity from suit had [not] been fully adjudged so that legislative action deprived it of a final judgment in its favor" due process not violated by restoration of remedy to plaintiff); *Campbell v. Holt*, 115 U.S. 620, 6 S.Ct. 209, 29 L.Ed. 483 (1885), and does not implicate separation of powers concerns, *see McDaniel*, 855 F.2d at 810; *Axel Johnson*, 790 F.Supp. at 482.

In light of these considerations, the defendants' challenge to § 27A(b) cannot be sustained either facially or as applied. Although § 27A(b) directs courts to reinstate cases dismissed as time barred subsequent to June 19, 1991 if they would have been timely under the law existing on that date, it does not speak specifically to cases in which final judgment has been entered and the time for appeal has expired. *Cf. McDaniel*, 855 F.2d at 808–10 ("constitutional difficulty" would be presented if statute expressly provided that it was to apply to cases in which final, unappealed judgments had been rendered prior to statute's enactment date; "If, as the plaintiffs claim, the HCPA was designed to reach cases such as this one, it would conflict manifestly with a longstanding rule which

insulates certain adjudicated rights from the reach of the legislature.").

Neither does § 27A(b) violate these constitutional norms as applied. Here, final judgment was not entered until well after the enactment of the statute. Thus, at the time of the enactment, no rights were vested, nor was the adjudicative integrity of this court implicated. *See Tonya K. v. Board of Educ.*, 847 F.2d 1243, 1247–48 (7th Cir.1988) ("If the defendants wanted to have a judgment ... on which to rely, they had to secure a dismissal with prejudice in 1984. They did not, and the Constitution does not give them as a gift what they failed to secure when they had the chance.").[11]

CONCLUSION

In summary, § 27A violates neither separation of powers principles nor the due process clause of the Fifth Amendment. The statute effects a change in the law underlying § 10(b) claims which does not contravene a constitutionally grounded Supreme Court decision and does not upset the finality of judgments of the federal courts, either facially or as applied. Because § 27A is therefore not unconstitutional, and because Rabin's claims would have been timely under the law in effect in this jurisdiction on June 19, 1991, his motion to reinstate his § 10(b) claims is granted.

It is so ordered.

---

**11.** I express no opinion as to whether an as applied challenge could succeed under any circumstance. This question necessarily implicates the issue, also not addressed here, as to whether a final judgment dismissing an action as time-barred is distinguishable from one based on the merits of the claim for purposes of the "vested rights" doctrine. *See, e.g. Plaut v. Spendthrift Farm, Inc.*, 789 F.Supp. 231 (E.D.Ky. 1992) (where final judgment entered prior to enactment of § 27A(b), statute unconstitutional because it directs federal court to reverse or suspend final judgment). In this respect, Judges Conner and Lasker may have gone to

far. *See Adler*, 790 F.Supp. at 1244 (*McCullough* rule "does not apply where the judgment was not based upon the merits of the claim, but instead was the result of the application of the defense of statute of limitations, a mere technical rule"); *Axel Johnson*, 790 F.Supp. at 483 ("Legislation to alter such a technical defense [as the statute of limitation], and its application even to dismissed cases, goes far less to the heart of the judicial function than would a legislative attempt to reverse adjudications which had addressed the true merits of the disputes in question.").