**BANK OF DENVER, a Colorado banking association, individually and on behalf of all others similarly situated, Plaintiff,**

v.

**SOUTHEASTERN CAPITAL GROUP, INC., f/k/a Southeastern Municipal Bonds, Inc., a Florida corporation; First United Securities Group of California, Inc., a California corporation; Michael Siemer; Kenneth W. Hutchison and Charlotte S. Hutchison; Robert C. MacElvain; Martha B. Taylor; Martha B. Taylor, P.C.; Calkins, Kramer, Grimshaw & Harring; Calkins, Kramer, Grimshaw & Harring, P.C.; Catherine Calkins, as personal representative of the Estate of H. Harold Calkins; Richard L. Harring; Victor L. Wallace,**

II, P.C.; Robert L. Kirby; James S. Bailey, Jr., P.C.; John J. Tipton, P.C.; Gilbert F. McNeish, P.C.; Wayne B. Schroeder, P.C.; Wendy J. Harring; Ward L. Van Scoyk; Bruce E. Deacon; T. Edward Icenogle; Richard L. Shearer; Matthew R. Dalton; John A. Eckstein; Frederick Huff; Charles E. Norton; and Terry L. Cook, Defendants.

Civ. A. No. 90-B-1551.

United States District Court,
D. Colorado.

March 20, 1992.

Joseph E. Meyer, III, Susan M. Hargleroad and William J. Martinez, Pendleton & Sabian, P.C., Denver, Colo., for plaintiff.

John D. Phillips and A. Peter Gregory, Hall & Evans, Denver, Colo., for Calkins defendants.

Michael Williams and Colin Campbell, Wood, Ris & Hames, P.C., Denver, Colo., for Taylor defendants.

Larry F. Hobbs and Rita Byrnes Kittle, Hornbein MacDonald Fattor and Hobbs, P.C., Denver, Colo., for Hutchison defendants.

Robert Wagner, Southeastern Capital Group, Inc., Orlando, Fla., for Southeastern.

Robert C. MacElvain, pro se.

Kim B. Childs and Dean A. McConnell, Cooper & Kelley, P.C., Denver, Colo., for Van Scoyk and Icenogle defendants.

## MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

Pursuant to § 476 of the Federal Deposit Insurance Corporation Improvement Act of 1991, P.L. No. 102-242, plaintiffs move for reinstatement of their filed claim under § 10(b) of the 1934 Securities and Exchange Act and Rule 10b-5. Pursuant to 28 U.S.C. § 2403, notice of the claim of unconstitutionality was sent to the U.S. attorney general on February 20, 1992. The motion was heard on March 20, 1992. Because I conclude that § 476 is unconsti-

tutional for violating the principle of the separation of powers, plaintiffs' motion to reinstate is denied.

### I.

On June 20, 1991, the Supreme Court held that actions brought under § 10(b) of the 1934 Act must be commenced within one year of the discovery of the facts constituting the violation and no later than three years after the violation. *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* — U.S. —, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991). The decision ended considerable uncertainty and disagreement over the interpretation of § 10(b) and the applicable limitation period for actions implied under that section. The Court borrowed the "one and three" statute of limitation and repose found in another section of the 1934 Act as most closely expressing the intent of Congress under § 10(b). Furthermore, on that same day the court held that its interpretation in *Lampf* applied retroactively to all pending § 10(b) cases. *James B. Beam Distilling Co. v. Georgia,* — U.S. —, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991). *See also, Anixter v. Home-Stake Production Co.,* 939 F.2d 1420 (10th Cir.1991), (Retroactively applying the one and three formula).

Pursuant to this authority, certain defendants in this action moved to dismiss plaintiffs' § 10(b) and Rule 10b–5 claims as time barred. In my Memorandum Opinion and Order dated August 20, 1991, I granted defendants' motion. *Bank of Denver v. Southeastern Capital Group, Inc.,* 770 F.Supp. 595 (D.Colo.1991). However, because that motion did not dispose of all claims and defendants in the case, final judgment did not enter.

On November 27, 1991, Congress enacted § 476 of the Federal Deposit Insurance Corporation Improvement Act of 1991. That provision attempts to add a new section 27A to the 1934 Act, and states in relevant part:

> The limitation period for any private civil action implied under Section 10(b) of this Act that was commenced on or before June 19, 1991, shall be the limitation period provided by the laws applicable in the jurisdiction, including principles of retroactivity, as such laws existed on June 19, 1991....

> Any private action implied under Section 10(b) of this Act that was commenced on or before June 19, 1991—

> (1) which was dismissed as time-barred subsequent to June 19, 1991 ... shall be reinstated on motion by the plaintiff....

Congress did not otherwise amend the 1934 Act by writing an express statute of limitation and repose into § 10(b). Indeed, Congress could not agree on such a measure. 137 Cong.Rec. S18522 (Nov. 26, 1991) and 137 Cong.Rec. S18624 (Nov. 27 1991).

Thus, § 476 carves out a limited class of pending federal actions for special treatment. Cases filed after the *Lampf* decision are subject to the one and three rule. However, for cases pending on June 19, 1991, Congress directs the federal courts to ignore the Supreme Court's binding interpretation of the 1934 Act and to return to the precedent applicable in each jurisdiction before *Lampf.*

Pursuant to § 476, plaintiffs timely moved to reinstate their § 10(b) claims. Defendants oppose that motion on the ground that § 476 violates the principle of the separation of powers and, therefore, is unconstitutional. I agree with defendants.

### II.

The Supreme Court "consistently has given voice to, and has reaffirmed, the central judgment of the Framers of the Constitution that, within our political scheme, the separation of governmental powers into three coordinate Branches is essential to the preservation of liberty." *Mistretta v. United States,* 488 U.S. 361, 380, 109 S.Ct. 647, 658, 102 L.Ed.2d 714 (1989). In writing about the principle of separated powers, Madison said: "No political truth is certainly of greater intrinsic value or stamped with the authority of more enlightened patrons of liberty." *The Federalist* No. 47, p. 324 (J. Cooke ed. 1961).

Under the division of power established by the Constitution, the legislative branch writes the law while the judicial branch enforces and interprets those laws. *United States v. Schooner Peggy*, 5 U.S. (1 Cranch) 103, 2 L.Ed. 49 (1801). Explaining this division of power, Hamilton noted:

> The complete independence of the courts of justice is peculiarly essential in a limited constitution.... Limitations [on legislative authority] can be preserved in practice no other way than through the medium of the courts of justice; whose duty it must be to declare all acts contrary to the manifest tenor of the constitution void.

*The Federalist*, No. 78, p. 524. As early as *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 175, 2 L.Ed. 60 (1803), in establishing the doctrine of judicial review, the Supreme Court stated: "It is emphatically the province and duty of the judicial department to say what the law is. Those who apply the rule to particular cases, must of necessity expound and interpret that rule."

The Supreme Court has "not hesitated to strike down provisions of law that either accrete to a single Branch powers more appropriately diffused among separate branches or that undermine the authority and independence of one or another coordinate Branch." *Mistretta*, 488 U.S. at 382, 109 S.Ct. at 661. It is these twin concerns of encroachment and aggrandizement that have driven the Court's separation of powers jurisprudence. *Buckley v. Valeo*, 424 U.S. 1, 122, 96 S.Ct. 612, 683, 46 L.Ed.2d 659 (1976). Thus, the Court has invalidated attempts by Congress to exercise the responsibilities assigned to other branches or attempts to reassign powers vested in it to other branches. *See e.g., Bowsher v. Synar*, 478 U.S. 714, 106 S.Ct. 3181, 92 L.Ed.2d 583 (1986), (Congress may not exercise removal power over officer performing executive functions); *INS v. Chadha*, 462 U.S. 919, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983), (Congress may not control execution of laws except through Article I procedures); *United States v. Klein*, 80 U.S. (13 Wall.) 128, 146, 20 L.Ed. 519 (1871), (Congress may not prescribe rules of decision to the Judicial Department in pending cases). By the same token, the Court has upheld statutes that commingle functions of the government, but pose no danger of either aggrandizement or encroachment. *See e.g., Mistretta*, 488 U.S. at 412, 109 S.Ct. at 675, (Congress may delegate legislative power to Sentencing Commission within judiciary); *Morrison v. Olson*, 487 U.S. 654, 108 S.Ct. 2597, 101 L.Ed.2d 569 (1988), (Judiciary may appoint special prosecutor).

In *Nixon v. Administrator of General Services*, 433 U.S. 425, 443, 97 S.Ct. 2777, 2790, 53 L.Ed.2d 867 (1977), the Court adopted this test:

> [I]n determining whether [an act] disrupts the proper balance between the coordinate branches, the proper inquiry focuses on the extent to which it prevents [a branch] from accomplishing its constitutionally assigned functions. [Only] where the potential for disruption is present must we then determine whether that impact is justified by an overriding need to promote objectives within the constitutional authority of Congress.

In cases specifically involving the judicial branch, the Court has expressed its vigilance against the danger that a provision of law "impermissibly threatens the institutional integrity of the Judicial Branch." *Commodity Futures Trading Comm. v. Schor*, 478 U.S. 833, 851, 106 S.Ct. 3245, 3257, 92 L.Ed.2d 675 (1986). There, the Court focused on whether the "essential attributes of judicial power" are reserved to Article III courts. *Id. See also, Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), (Congress may not assign Article III judicial power to Article I judge).

However, the Framers did not require—and indeed rejected—the notion that the three branches must be entirely separate and distinct. *Mistretta*, 488 U.S. at 380, 109 S.Ct. at 658. Addressing this point directly, Madison said that the principle of separated powers

> does not require that the legislative, executive, and judiciary departments

should be wholly unconnected with each other.... [U]nless these departments be so far connected and blended as to give to each constitutional control over the others, the degree of separation which the maxim requires, as essential to a free government, can never in practice be duly maintained.

*The Federalist* No. 48, p. _____. This approach to the division of power recognizes that the greatest security against tyranny lies in the carefully crafted system of checked and balanced power within the three branches of government. *See, e.g., Nixon v. Administrator of General Services,* 433 U.S. at 443, 97 S.Ct. at 2790; *United States v. Nixon,* 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974).

■ Under this system of checks and balances, Congress has a constitutional means to alter judicial interpretation of a statute—it can repeal or amend the law. Congress can even require the courts to apply such changes retroactively. By so doing, Congress can effect indirectly the outcome of pending litigation. *See e.g., International Union of Electrical, Radio and Machine Workers v. Robbins & Myers, Inc.,* 429 U.S. 229, 242–44, 97 S.Ct. 441, 450–51, 50 L.Ed.2d 427 (1976), (Congress can enact new time limit for filing EEOC complaints and apply new law retroactively to revive claims that were time-barred under old law); *Chase Securities Corp. v. Donaldson,* 325 U.S. 304, 315–16, 65 S.Ct. 1137, 1143, 89 L.Ed. 1628 (1945), (Where legislature adopts new statute of limitations, new law can revive previously time-barred claim). But Congress cannot cross the line of division and usurp the judicial branch's constitutional "province and duty" to interpret the laws enacted by the legislature.

Congress crossed that line in *United States v. Klein,* 80 U.S. (13 Wall.) 128, 20 L.Ed. 519 (1871). In that case, the plaintiff sued under a federal statute which gave confederate landowners the right to recover their property upon proof of loyalty to the federal government. In an earlier case, the Supreme Court had held that a presidential pardon was sufficient proof of loyalty under this law. Because the plaintiff in *Klein* had received a presidential pardon, the court of claims awarded recovery. Pending the government's appeal, Congress passed a statute providing that a pardon, under most circumstances, was conclusive proof of disloyalty and directed federal courts to so find.

The Supreme Court declared the law unconstitutional, saying that Congress "had passed the limit which separates the legislative from the judicial power." *Id.* at 146–47. Although Congress had the power to make exceptions to the Court's appellate jurisdiction, the Court held that Congress could not "prescribe rules of decision to the Judicial Department of the government in cases pending before it." *Id.* at 146.

[T]he language of the proviso shows plainly that it does not intend to withhold appellate jurisdiction except as a means to an end. *Its great and controlling purpose is to deny to pardons granted by the President the effect which this court had adjudged them to have.* The proviso declares that pardons shall not be considered by this court on appeal. We had already decided that it was our duty to consider them and give them effect, in cases like the present, as equivalent proof of loyalty.

*Id.* at 145, (emphasis added).

The Court distinguished an earlier case, *Pennsylvania v. Wheeling & Belmont Bridge Co.,* 59 U.S. (18 How.) 421, 15 L.Ed. 435 (1855). There, the Court had originally held that a bridge over the Ohio River was an obstruction to navigation. Intervening legislation made the bridge a post-road for the passage of United States mail and required that navigation not interfere with the bridge. The Court concluded that this new statute *changed* the previous law. *Id.* at 430. The Court reasoned that the new statute passed constitutional muster because Congress had changed the law as opposed to directing the Court's decision in the case. This distinction was critical to the *Klein* Court: "No arbitrary rule of decision was prescribed in [*Wheeling Bridge*], but the court was left to apply its ordinary rules to the new circumstances

created by the act. In [this case], no new circumstances had been created by legislation." *Klein,* 80 U.S. at 146–47.

This distinction was applied by the Ninth Circuit in *Seattle Audubon Society v. Robertson,* 914 F.2d 1311, 1315 (9th Cir.1990), *cert. granted,* —— U.S. ——, 111 S.Ct. 2886, 115 L.Ed.2d 1051 (1991):

> [T]he critical distinction, for purposes of deciding the limits of Congress' authority to affect pending litigation through statute, is between actual repeal or amendment of the law underlying the litigation, which is permissible, and the actual direction of a particular decision in a case, without repealing or amending the law underlying the litigation, which is not permissible.

The court held that Congress can *"amend* or *repeal* any law, even for the purpose of ending pending litigation," but it "cannot prescribe a rule of decision where no new circumstances have been created by legislation." *Id.,* (emphasis in original).

### III.

When a court is asked to invalidate a statutory provision that has been approved by both Houses of Congress and signed by the President, it should do so only for the most compelling constitutional reasons. *Bowsher,* 478 U.S. at 736, 106 S.Ct. at 3193. Notwithstanding that heavy burden, I am convinced that defendants present compelling constitutional reasons why § 476 is invalid. In passing § 476, Congress has crossed the line into the exclusive province of the judiciary. Therefore, I hold that § 476 violates the principle of the separation of powers and is unconstitutional.

The law underlying this action, § 10(b), does not provide for a limitations and repose period. Thus, the Supreme Court, exercising its constitutional duty to interpret the laws, adopted the one and three rule and applied that rule retroactively to all pending cases. In response, Congress did not retroactively amend the section to state an express limitations period. Rather, Congress selected a discrete category of federal cases, those pending on June 19, 1991, and directed federal courts hearing these cases to ignore the Supreme Court's binding interpretation of § 10(b) set out in *Lampf.* Congress thus effectively acted as a "super-appellate court," overturning *Lampf* without replacing that decision with any new law.

This case is directly analogous to *Klein*—in both cases, Congress sought to displace the Supreme Court's interpretation of a statute without changing the underlying law. Just as in *Klein,* the "great and controlling purpose" of § 476 is to deny the interpretation of § 10(b) "which this court had adjudged [it] to have." If Congress' purpose was to change the law, it could have enacted a retroactive express statute of limitations or made § 476 applicable to all cases regardless of whether they were filed on or before June 19, 1991. Instead, by selecting a discrete body of pending actions for special treatment under § 476, Congress demonstrated that its sole purpose was to nullify the Supreme Court's interpretation of § 10(b) without amending § 10(b) itself. In so doing, Congress usurped the power set aside to the judiciary by the Constitution.

Plaintiffs argue that § 476 does not direct a specific decision on the merits of the § 10(b) claim and, of course, they are correct. However, the statute at issue in *Klein* did not direct a specific decision on the merits of plaintiff's claim for return of his property either. Rather, the statute there prescribed an interpretive rule that presidential pardons be considered proof of disloyalty. Likewise here, § 476 prescribes an interpretive rule that, in any civil action implied under § 10(b), the limitations period would be the period applicable in the jurisdiction on June 19, 1991. In both instances, the prescribed interpretation was at odds with prior Supreme Court law and the prescribed interpretation resolved a question dispositive of the action. Therefore, I hold that § 476 prescribes a rule of decision within the meaning of *Klein.*

Furthermore, section 476 is unconstitutional under general separation of power principles as well. It is beyond debate that the quintessential constitutional attribute of the judiciary is the power to interpret the laws. Section 476 impermissibly encroaches on this function by directing fed-

1098

eral courts to ignore the Supreme Court's decision in some cases and to apply *Lampf* in others. Once the Supreme Court has interpreted a law, that interpretation is the binding law of the land until Congress changes it. Short of exercising its Article I power to amend the law, Congress cannot erase binding Supreme Court precedent by legislative fiat without violating the bedrock doctrine of separation of powers. To hold otherwise would erode the institutional integrity of the judiciary.

Moreover, there is no need for § 476 in its present form, overriding or otherwise. The Constitution provided Congress with a "check" on the Supreme Court. Congress is free to amend or repeal a law if it does not like the Court's interpretation of that law. Here, Congress could have written an express statute of limitation and repose into § 10(b) and applied the amendment retroactively. That Congress could not agree on such an amendment will not vitiate the Constitution's fundamental, principal protection against tyranny. Simply, Congress cannot direct federal courts to ignore Supreme Court precedent in a discrete category of pending cases without violating the separation of powers principle.

■ In the first reported case to have considered this challenge to § 476, the court upheld the law with scant analysis and no review of the Supreme Court's separation of powers jurisprudence. *Bankard v. First Carolina Communications, Inc.*, No. 89 C 8571, 1992 WL 3694 (N.D.Ill.1992). There, the district court stated "Congress has changed the law. It might seem otherwise only because instead of delineating fully the change of law, Congress has made the change by reference, incorporating the prevailing law in the applicable jurisdiction." *Id.*, slip op. at 14. However, even under this view, the statute violates the rule of separation of power adopted in *Klein* because the change does not apply to all cases, but only cases pending on June 19, 1991. Cases filed after that date are subject to *Lampf's* one and three rule. Thus, Congress has not "changed" the law but has arbitrarily selected a limited body of cases and directed the judiciary to decide these cases in a particular way.

In their supplemental citation of authorities, plaintiffs attach three recent district court opinions upholding § 476 against a separation of powers challenge. None are persuasive. These decisions articulate no reason for their result and, in my view, incorrectly require the challenged statute to direct a decision on the merits. *Ayers v. Sutliffe*, No. C–1–90–650 (S.D.Ohio Feb. 11, 1992); *Venturtech II v. Deloitte Haskins & Sells*, No. 88–1012–CIV–5–H (E.D.N.C. Feb. 24, 1992); and, *TBG, Inc. v. Bendis*, 1992 WL 80622, No. 89–2423–O (D.Kan. Mar. 5, 1992). Two district courts have invalidated § 476 on a separation of powers challenge, but with little discussion or analysis. *Mancino v. International Technology Corp.*, 1992 WL 114436, No. 89–7244–RMT(SX) (C.D.Cal. Mar. 10, 1992); *In re Brichard Securities Litigation*, 788 F.Supp. 1098 (N.D.Cal.1992).

I hold that § 476 violates the principle of the separation of powers and is, therefore, unconstitutional. As plaintiffs' motion depends on an invalid law, their motion is denied.

Accordingly, IT IS ORDERED THAT:

(1) Plaintiffs' motion to reinstate is DENIED.