In re FIRST AMERICAN CENTER
SECURITIES LITIGATION
(All Actions).

Robert D. DILLEY and Richard A. Biorn,
On Behalf Of Themselves And All Others Similarly Situated, Plaintiffs,

v.

FIRST AMERICAN CENTER LIMITED PARTNERSHIP, Shearson Lehman Brothers Inc., Formerly Known as Shearson Lehman Hutton Inc., Shearson Lehman First American Center, Inc., A. George Kallop, Paul W. Perkins, Gary D. Gallagher, William M. Kahn, Robert F. Greenwald, and Marshall and Stevens Incorporated, Defendants.

No. MDL No. 869 (CLB).

United States District Court,
S.D. of New York.

Oct. 23, 1992.

Issued Nunc Pro Tunc Oct. 13, 1992.

Andrew Lamis, Lieff Cabraser & Heimann, San Francisco, CA, for plaintiffs.

William D. Gallagher, McMahon, Martine & Merritt, New York City, for defendants.

## MEMORANDUM & ORDER

BRIEANT, Chief Judge.

On July 10, 1991, defendants Shearson Lehman Brothers Inc., Shearson Lehman Hutton Inc., First American Center Limited Partnership, Shearson Lehman First American Center Inc., A. George Kallop, Paul W. Perkins, Gary D. Gallagher, William M. Kahn, and Robert F. Greenwald (hereinafter referred to as the "Shearson defendants") moved to dismiss the Consolidated Class Action Complaint (hereinafter "the Complaint") pursuant to Rule 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure. By separate motion, filed on July 11, 1991, defendant Marshall & Stevens Incorporated sought the same relief pursuant to Rules 9(b), 12(b)(1) and 12(b)(6).

This Court heard oral argument on the motions on August 5, 1991 and decision on the motions was deferred pending our Court of Appeals reexamination of its decision in *Welch v. Cadre Capital*, 923 F.2d 989 (2d Cir.1991) ("Welch I"), which the Supreme Court remanded *sub nom. Northwest Savings Bank PaSa v. Welch*, — U.S. ——, 111 S.Ct. 2882, 115 L.Ed.2d 1048 (1991), for reconsideration in light of its decisions in *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, — U.S. ——, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991), and *James B. Beam Distilling Co. v. Georgia*, — U.S. ——, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991).[1]

This litigation arises out of the sale of approximately $14 million dollars of units in First American Center Limited Partnership, a failed real estate limited partnership whose principal asset was a 28–story commercial office building, First American Center, in Nashville, Tennessee. Complaint, ¶ 24. The property was financed in part through a $35 million non-recourse first mortgage loan. Complaint, ¶ 26. The total debt-financing for the acquisition exceeded $40 million dollars. Complaint, ¶ 27. Limited partnership interests were sold by defendant Shearson Lehman Brothers Inc. through the distribution of a Private Placement Memorandum dated March 31, 1986 that contained among others statements, an appraisal of the value of First American Center prepared by defendant Marshall and Stevens, Incorporated. *See* Complaint ¶ 30.

---

**1.** On October 7, 1991, the Court of Appeals, on remand, vacated *Welch I. See Welch v. Cadre Capital*, 946 F.2d 185 (2d Cir.1991). The effect of this ruling is limited by the subsequent enactment of Section 27A of the Securities Exchange Act of 1934, discussed *infra*, at 329.

On November 3, 1989, unit investors were notified in writing that First American Bank of Nashville, which occupied 53% of the property's rentable square footage, had terminated its lease and vacated its space in First American Center. Complaint, ¶ 70. By letter dated February 16, 1990, the unit holders were notified that "the potential loss of the Property put the LIMITED PARTNERS' investment 'at serious risk of total loss.' " Complaint, ¶ 74. On July 13, 1990, investors in First American Center Limited Partnership were informed that all of the partnership's assets had been lost, and that title to the First American Center property had been transferred to the first mortgage lender effective July 1, 1990. Complaint, ¶ 78.

Plaintiffs in the Complaint allege that First American Center Limited Partnership units were offered and sold to the investing public by way of misrepresentations and omissions of material fact which concealed from purchasers important information regarding the operation and performance of First American Center and the potential profitability and true risks of the investment. In particular, plaintiffs assert claims against the Shearson defendants for violations of federal securities law, Section 10(b) of the Securities Exchange Act of 1934 [15 U.S.C. § 78j(b)] and Rule 10b–5 thereunder (Count I), and the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1962(c) and (d) (Count II), as well as claims for common law fraud (Count III), negligent misrepresentations (Count IV), negligence (Count V) and breach of fiduciary duty (Count VI), arising out of the offer and sale of limited partnership interests in First American Center Limited Partnership.

The substantive allegations with respect to defendant Marshall and Stevens are that Marshall and Stevens prepared an appraisal for the property by which it represented that First American had a fair market val-

ue of $54,000,000 million dollars as of January 6, 1986 and that this appraisal was knowingly and/or recklessly inflated. Based on these factual allegations, plaintiffs allege that defendant Marshall and Stevens is liable for violating Section 10(b) of the Securities Exchange Act of 1934 (Count I), as well for the common law torts of fraud (Count III), negligent misrepresentation (Count IV), negligence (Count V) and professional negligence (Count VIII).

Originally named in the Complaint as a defendant was KPMG Peat Marwick, alleged to be the independent auditor of First American Center Limited Partnership. By letter dated July 3, 1991, plaintiffs voluntarily dismissed this defendant from the action without prejudice and, by Memorandum & Order dated July 10, 1991, this Court concluded that the dismissal of Peat Marwick would not prejudice the class. *See* Doc. Nos. 7, 8.

On August 31, 1992, this Court provisionally certified a plaintiff class [2] and preliminarily approved a Class Action Settlement Agreement between the proposed Settlement Class, represented by plaintiffs Robert D. Dilley and Richard A. Biorn, and the Shearson defendants. *See* Doc. No. 31. On October 21, 1992, the Court held a hearing to consider final approval of the proposed settlement and an Order and Judgment of Final Settlement Approval was filed on the same date. *See* Doc. No. 41. The Settlement Agreement is not global, as it fails to address the claims pleaded against Marshall and Stevens.

By letters dated August 14 and August 18, 1992, counsel for plaintiffs and defendant Marshall and Stevens, Inc., respectively, request that this Court rule on defendant Marshall and Stevens' motion to dismiss. *See* Doc. Nos. 32, 33. The motion was marked fully submitted, decision reserved on September 15, 1992, the date of the last submission by counsel. This constitutes the decision of the Court.

---

**2.** The provisional class is defined as follows: All persons who have purchased units or otherwise invested in First American Center Limited Partnership as of the date of the Settlement Agreement, including transferees and those persons who have sold their units, except those who file valid and timely requests for exclusion in the District Court pursuant to the *Notice of Class Certification and Proposed Partial Settlement....*
*See* Doc. No. 31, ¶ 2, at 3.

The initial complaint in this group of actions was filed on August 9, 1990. On November 8, 1990, our Court of Appeals held for the first time that the appropriate statute of limitations for actions arising under Section 10(b) of the Exchange Act was the one-year/three-year limitations period found in Section 9(e) and 18(c) of the Exchange Act, 15 U.S.C. § 78i(e) and 78r(c), which requires that actions be brought within one year after discovery of the conduct alleged to constitute the violation, but in no event more than three years after the occurrence of the violation. *Ceres Partners v. GEL Associates*, 918 F.2d 349 (2d Cir.1990).

On November 27, 1991, however, Congress enacted Section 27A of the Exchange Act, Federal Deposit Insurance Corporation Improvement Act of 1991, § 476, Publ.L. No. 102–242, 105 Stat. 2236, which was signed into law by the President on December 19, 1991. Section 27A provides:

(a) *Effect on Pending Causes of Action.* The limitation period for any private civil action implied under Section 10(b) of this Act that was commenced on or before June 19, 1991, shall be the limitation period provided by the laws applicable in the jurisdiction, including principles of retroactivity, as such laws existed on June 19, 1991.

(b) *Effect on Dismissed Causes of Action.* Any private civil action implied under Section 10(b) of this Act that was commenced on or before June 19, 1991—

(1) which was dismissed as time-barred subsequent to June 19, 1991, and

(2) which would have been timely filed under the limitation period provided by the laws applicable in the jurisdiction, including principles of retroactivity, as such laws existed on June 19, 1991,

shall be reinstated on motion by the plaintiff not later than 60 days after the date of enactment of this section.

Federal Deposit Insurance Corporation Improvement Act of 1991, § 476, Publ.L. No. 102–242, 105 Stat. 2236, 2387.

Defendant Marshall and Stevens argues that plaintiffs' Section 10(b) claim should be dismissed on the ground that it is barred by the statute of limitations. Defendant argues further that Section 27A of the Securities Exchange Act of 1934 violates the separation of powers principle and due process clause of the Fifth Amendment because its sole purpose and effect is to eliminate the binding precedential effect of the Supreme Court's decision in *Lampf*, —— U.S. at ——, 111 S.Ct. 2773 and *James B. Beam Distilling Co.*, —— U.S. ——, 111 S.Ct. 2439.

■ Before reaching the constitutional issue, this Court must first determine what the applicable statute of limitations was as of June 19, 1991, the day before the Supreme Court decided *Lampf* and *Beam*. Defendant maintains that as of June 19, 1991, litigants in the Second Circuit were bound by a one-year/three year period of limitations as stated in *Ceres*, 918 F.2d at 359, and applied retroactively in *Welch I.* As such, defendant contends that the offering of interests in First American Center commenced on March 31, 1986, the date of the Private Placement Memorandum, and under the terms of the Private Placement Memorandum ended on or before March 1, 1987. Defendant, applying the one-year/three year limitations, concludes that the statute of limitations on the Section 10(b) claim had run when the first complaint was filed on August 9, 1990, more than three years after the alleged misrepresentations in or omissions from the Private Placement Memorandum.

The problem with this analysis is that plaintiffs commenced this action more than three months before our Court of Appeals decision in *Ceres* which changed the Second Circuit's longstanding practice of applying the forum state's most analogous state statute of limitations, including the so-called "borrowing statutes," to claims under Section 10(b). *See Rabin v. Fivzar Associates*, 801 F.Supp. 1045 (S.D.N.Y. 1992) (Sweet, J.); *see also Armstrong v. McAlpin*, 699 F.2d 79, 87 (2d Cir.1983) ("[plaintiff] must sue within six years from the time the cause of action accrued or within two years from the time the wrongdoing was, or with reasonable diligence should have been, discovered."); N.Y.Civ.

Prac.L. & R. §§ 203(f), 213(8) (McKinney 1990 & Supp.1992) (accrual of claim/statute of limitations provisions).

Thus, prior to the Court of Appeals decision in *Ceres*, federal courts in New York applied New York's two-year/six year statute of limitations for common law fraud to federal actions alleging securities fraud upon New York residents, and, for non-residents, the shorter of the limitations period of the state where the action accrued, normally the plaintiff's residence, or the limitations period of the New York statute. *See Arneil v. Ramsey*, 550 F.2d 774 (2d Cir.1977) ("[A] cause of action for fraud under Section 10(b) of the Exchange Act arises where 'its economic impact is felt, normally the plaintiff's residence.' " (citations omitted)); N.Y.Civ.Prac.L & R. § 202 (McKinney 1990 & Supp.1992); *see also Robertson v. Seidman & Seidman*, 609 F.2d 583, 586 (2d Cir.1979) (action accrues in the state in which the plaintiff resided at the time of the alleged injury); *RAM Investment Associates v. Citizens Fidelity Bank & Trust Co.*, 1992 WL 240594, 1992 U.S. Dist. LEXIS 13712 (S.D.N.Y. September 10, 1992) (applying the state statute of limitations for each state in which a class member resides); *but see State Teachers Retirement Board v. Fluor Corp.*, 500 F.Supp. 278, 288 (S.D.N.Y.1980), *rev'd on other grounds*, 654 F.2d 843 (2d Cir.1981) (applying one statute of limitations, that of the place where the fraud occurred, to entire class).

In this case, plaintiff Robert Dilley is a citizen of Iowa and prior to *Lampf*, a federal court sitting in New York probably would have applied the two year limitations period found in Iowa's Uniform Securities Act, Blue Sky Law, to his action under Section 10(b) and Rule 10b–5. *See In re Alodex Corporation Securities Litigation*, 533 F.2d 372 (8th Cir.1976) (applying Iowa's Blue Sky Law, Iowa Code Annotated § 502.26, *repealed by* Act of 1975, 66 G.A., ch. 234, § 621 (effective January 1, 1976), *replaced by* Iowa Code Annotated § 502.-504 (West 1992)); *Vanderboom v. Sexton*, 422 F.2d 1233 (8th Cir.1970), *cert. denied*, 400 U.S. 852, 91 S.Ct. 47, 27 L.Ed.2d 90 (1970) (adoption of state statute of limita-

tions); *see also* Iowa Code Annotated § 502.504 (West 1992).

The claims of plaintiff Richard Biorn, a citizen of Minnesota, would be subject to the three year limitations period contained in Minnesota's Uniform Securities Act which is almost identical to Rule 10b–5. *See Bormann v. Applied Vision Systems, Inc.*, 800 F.Supp. 800 (D.Minn.1992); *TCF Banking & Savings, F.A. v. Arthur Young & Co.*, 706 F.Supp. 1408, 1430 (D.Minn.1988); *Nielsen v. Professional Financial Management, Ltd.*, 682 F.Supp. 429, 438 (D.Minn.1987); *see also* Minn.Stat. § 80A.23(7) (1991); *Vanderboom v. Sexton*, 422 F.2d 1233 (8th Cir.1970), *cert. denied* 400 U.S. 852, 91 S.Ct. 47, 27 L.Ed.2d 90 (1970) (adoption of state statute of limitations).

There can be no doubt that the relevant limitations period with respect to Mr. Biorn's claims is three years since the limitations period pre-*Ceres* and post-*Ceres* is the same—three years. It is equally clear that the applicable statute of limitations with respect to Mr. Dilley's claims is two years.

■■ While Iowa and Minnesota state law determines the limitations period for plaintiff Biorn and Dilley's pre-*Ceres* claims, federal law determines when the period begins to run. *Arneil v. Ramsey*, 550 F.2d 774 (2d Cir.1977). It is well settled that the time begins to run when "in the exercise of reasonable diligence" plaintiff should have discovered the alleged fraud. *Id.* at 781. *See also Robertson v. Seidman & Seidman*, 609 F.2d at 587.

At this stage of the litigation, this Court does not have sufficient information to determine when the alleged fraud was discovered or in the exercise of reasonable diligence should have been discovered. Accordingly, the motion to dismiss on statute of limitation grounds, as to plaintiffs Biorn and Dilley, is denied without prejudice to renew upon the conclusion of discovery or at trial.

With respect to the remaining putative class members, the Court does not have sufficient information to determine the ap-

plicable statute of limitations. Thus, the Court denies the statute of limitations motion without prejudice to renew when discovery is complete, the residences of the putative class members have been determined and there is more information as to the place of the alleged fraud. *See State Teachers Retirement Board, supra.*

■ Having determined that plaintiffs may not be barred under the relevant statutes of limitations, this Court must now consider defendant's constitutional challenge to Section 27A. Courts which have considered this issue have reached contrary conclusions. Some courts have held that Section 27A is unconstitutional.[3] However, the only Courts of Appeals which have considered the issue, the Tenth Circuit in *Anixter, et al. v. Home–Stake Production Co., et al.,* 977 F.2d 1533 (10th Cir.1992) and the Eleventh Circuit in *Henderson v. Scientific–Atlanta, Inc.,* 971 F.2d 1567 (11th Cir.1992), have each concluded that Section 27A of the Securities Exchange Act of 1934 is constitutional.

While our Court of Appeals has not addressed this precise issue, the Court stated, in a footnote in *Litton Industries, Inc. v. Lehman Brothers Kuhn Loeb Incorporated,* 967 F.2d 742, 751 n. 6 *modified,* Nos. 91–7643, 91–7697, slip op. (2d Cir., September 23, 1992), that:

Although the parties have not suggested that section 27A is unconstitutional, we are aware that several district courts have so held, but, like Judges Conner and Lasker, we are unimpressed by the cogency of their analysis. *Compare Bank of Denver v. Southeastern Capital Group, Inc.,* 789 F.Supp. 1092 (D.Colo. 1992) *and TGX Corp. v. Simmons,* 786 F.Supp. 587 (E.D.La.1992) *with Brown v. The Hutton Group,* 89 Civ. 611, [795] F.Supp. [1307] (S.D.N.Y. April 27, 1992) *and Axel Johnson, Inc. v. Arthur Andersen & Co.,* 790 F.Supp. 476 (S.D.N.Y.

1992). *See also Robertson v. Seattle Audubon Society,* [——] U.S. [——, ——], 112 S.Ct. 1407, 1413, 118 L.Ed.2d 73 (1992) (statute may permissibly affect the outcome of a case, but may not direct findings of fact.)

967 F.2d at 751 n. 6.

All of the district courts, sitting in this Circuit, which have considered the issue have found Section 27A constitutional. *RAM Investment Associates, et al. v. Citizens Fidelity Bank & Trust Co., et al.,* 1992 U.S. Dist. LEXIS 13712 (S.D.N.Y. September 10, 1992) (Lasker, J.); *In re Crazy Eddie Securities Litigation,* 802 F.Supp. 804 (E.D.N.Y.1992) (Nickerson, J.); *Ades, et al. v. Deloitte & Touche, et al.,* 799 F.Supp. 1493 (S.D.N.Y.1992) (Sweet, J.); *Barr v. McGraw–Hill, et al.,* 1992 WL 196754, 1992 U.S.Dist. LEXIS 11408 (S.D.N.Y. August 3, 1992) (Conboy, J.); *Kalmanson v. McLaughlin, McLaughlin, Piven, Vogel, Inc.,* 1992 WL 190139, 1992 U.S. Dist. LEXIS 11172 (S.D.N.Y. July 29, 1992) (Keenan, J.); *Rabin v. Fivzar Associates, et al.,* 801 F.Supp. 1045 (S.D.N.Y. 1992) (Sweet, J.); *Axel Johnson, Inc. v. Arthur Andersen & Co.,* 790 F.Supp. 476 (S.D.N.Y.1992) (Lasker, J.); *Adler v. Berg Harmon Associates,* 790 F.Supp. 1235 (S.D.N.Y.1992) (Conner, J.); *Brown v. Hutton Group,* 795 F.Supp. 1307 (S.D.N.Y. 1992) (Conner, J.).

■ This Court agrees essentially for the reasons stated in *Axel Johnson, Inc.* and *Adler.* The separation of powers principle is violated when the Congress enacts legislation which directs the judicial branch to make specific factual findings or imposes a new "rule of decision" without changing the underlying law. While Section 27A readily can, and in view of *Robertson v. Seattle Audubon Society,* —— U.S. ——, 112 S.Ct. 1407, 118 L.Ed.2d 73 (1992) must, be regarded as a change in the law, it does

3. *See Bank of Denver v. Southeastern Capital Group, Inc.,* 789 F.Supp. 1092 (D.Colo.1992) (Babcock, J.); *In re Brichard Securities Litigation,* 788 F.Supp. 1098 (N.D.Cal.1992) (Legge, J.); *Gray v. First Winthrop Corp.,* No. C–90–2600 (N.D.Cal., May 6, 1992) (Vukasin, J.); *In re Rospatch Securities Litigation,* 802 F.Supp. 110 (W.D.Mich.1992) (Hillman, J.); *Johnston v. Cigna Corporation,* 789 F.Supp. 1098 (D.Colo.1992) (Babcock, J.); *Plaut v. Spendthrift Farm, Inc.,* 789 F.Supp. 231 (E.D.Ky.1992) (Hood, J.); *TGX Corp. v. Simmons,* 786 F.Supp. 587 (E.D.La. 1992) (Beer, J.).

not direct the outcome in any particular case.

■ This Section merely changes the law with respect to a specific defense by creating an express statute of limitations for claims filed prior to June 19, 1991 and leaves the application of the changed law to the courts. *See United States v. Sioux Nation of Indians,* 448 U.S. 371, 100 S.Ct. 2716, 65 L.Ed.2d 844 (1980) (Court affirmed Congress' power to waive res judicata defense and authorize relitigation of previously dismissed claim). As the Court observed in *Axel Johnson, Inc.,* "the mere fact that legislation reaches even a very few cases that existed at the time of enactment and were intended to be influenced by the legislation does not render the legislation an unconstitutional 'rule of decision.'" *Axel Johnson, Inc.,* 790 F.Supp. 476, at 480.

In addition to the Statute of Limitations argument, defendant Marshall and Stevens argues that plaintiffs' claims that are based on alleged fraudulent activity fail to plead fraud with the particularity contemplated by Rule 9(b). Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." The Rule further provides that "[m]alice, intent, knowledge and other conditions of the mind of a person may be averred generally."

■ Our Court of Appeals has held that "[t]he primary purpose of Rule 9(b) is to afford defendant fair notice of the plaintiff's claim and the factual ground upon which it is based." *Ross v. Bolton,* 904 F.2d 819, 823 (2d Cir.1990).

■ The Consolidated Class Action Complaint consists of 141 numbered paragraphs in which plaintiffs have adequately identified the nature and essential factual elements of the alleged fraud of defendant Marshall and Stevens. Plaintiffs allege that "MARSHALL AND STEVENS grossly overvalued the Property and represented to Plaintiffs and the Class Members that the Property had a fair market value of Fifty–Four Million Dollars ($54,000,000) as of January 8, 1986," which appraisal "was

arrived at with the participation of SHEARSON and was not an independent objective appraisal." Complaint, ¶¶ 37, 53. Specifically, plaintiffs allege that "[i]n connection with the appraisal, Shearson suggested a target value prior to the completion of the appraisal," Complaint, ¶ 52, and that Marshall and Stevens employed inaccurate occupancy, rental and growth rates for the Nashville market in preparing the appraisal. Complaint, ¶¶ 54, 56.

Plaintiffs further allege that "[t]he knowing or reckless employment of the appraisal by the Defendants was the window dressing utilized to justify the over leveraging of the Property." Complaint, ¶ 54. The Complaint states that defendants, including Marshall and Stevens, "knew at the time of the [Private Placement Memorandum's] dissemination, but did not disclose to Plaintiffs and proposed Class members that the Property was actually highly speculative in nature and had serious fundamental problems," including the fact that the property was located in a highly competitive market with low occupancy and rental rates and that the property was contaminated with asbestos which required removal and/or reduced rental rates. Complaint, ¶ 56.

Since the Consolidated Class Action Complaint alerts defendant Marshall and Stevens as to the nature of the alleged fraud, this Court concludes that plaintiffs have alleged sufficient facts to satisfy the requirements of Rule 9(b) and to apprise defendant Marshall and Stevens of the claims against it.

With respect to Marshall and Stevens' scienter argument, plaintiffs clearly allege that Marshall and Stevens had reason to know that its appraisal was inaccurate and would be used to sell partnership units to plaintiffs and other investors. *See e.g.* Complaint, ¶¶ 51–52. In addition, plaintiffs have pleaded a sufficient factual basis to support these allegations, including Marshall and Stevens' conscious disregard of the relevant market information. *Breard v. Sachnoff & Weaver, Ltd.,* 941 F.2d 142, 144 (2d Cir.1991) ("Allegations of scienter are sufficient if supported by facts giving rise to a 'strong inference' of fraudulent intent."); *Beck v. Manufacturers Hanover*

*Trust Co.,* 820 F.2d 46, 49 (2d Cir.1987), *cert. denied,* 484 U.S. 1005, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988) ("A common method for establishing a strong inference of scienter is to allege facts showing a motive for committing fraud and a clear opportunity for doing so. Where motive is not apparent, it is still possible to plead scienter by identifying circumstances indicating conscious behavior by the defendant, though the strength of the circumstantial allegations must be correspondingly greater." (citations omitted)).

■ Finally, defendant Marshall and Stevens moves to dismiss the Complaint on the grounds that plaintiffs have failed to state a claim for misrepresentation either under Section 10(b) (Count I) or under state law for fraud (Count III), negligent misrepresentation (Count IV), negligence (Count V) or professional negligence (Count VIII). In particular, defendant argues that the Private Placement Memorandum contains sufficient details and information regarding the risks of this investment.

Marshall and Stevens maintains that in the fourteen page section of the Private Placement Memorandum entitled "risk factors" potential investors were given sufficient information to evaluate the risk associated with investing in First American Center. Marshall and Stevens further maintains that the appraisal contained in the Private Placement Memorandum is clearly described as a Summary Appraisal. *See* Private Placement Memorandum, Table of Contents. The Appraisal states in relevant part:

> Set forth below is a summary of our findings regarding the subject property. While the summary reflects the salient points of our methodology and valuation conclusions, complete details of the property and analyses are contained in our full narrative report.

Marshall and Stevens also directs the Court's attention to the cautionary language contained throughout the Private Placement Memorandum. For instance, the Private Placement Memorandum contains the following warning:

> THE FINANCIAL FORECAST SHOULD NOT BE RELIED ON TO IN-DICATE ACTUAL RESULTS WHICH MAY BE ACHIEVED OR THAT THE TAX BENEFITS OR DISTRIBUTIONS REFLECTED WILL BE INDICATIVE OF THE RESULTS THE PARTNERSHIP AND THE OWNER PARTNERSHIP WILL ACHIEVE. THE ACTUAL RESULTS OF OWNING AND OPERATING THE PROJECT MAY VARY MATERIALLY FROM THOSE SET FORTH IN THE FINANCIAL FORECAST.

Private Placement Memorandum, at 46–47.

Defendant, relying on the Second Circuit's opinion in *Luce v. Edelstein,* 802 F.2d 49, at 56 (2d Cir.1986), argues that this Court should not impose liability on the basis of a Private Placement Memorandum which clearly "bespeaks caution." Such disclaimers, however, do not necessarily shield a defendant from liability and are insufficient to sustain a motion to dismiss, if plaintiffs allege particular facts demonstrating the defendant knew that such statements were false at the time they were made. *Luce v. Edelstein,* 802 F.2d 49, 57 (2d Cir.1986). In the instant case, the allegation with respect to Marshall and Stevens is not that the projections and forecasts regarding potential cash and tax benefits were misleading but that the actual appraisal of the property by Marshall and Stevens was false and misleading, as of the date it was made, January 8, 1986.

As the Court has already found, plaintiffs have alleged particular facts demonstrating that Marshall and Stevens knew that the claim that the property had a fair market value of $54 million dollars on January 8, 1986 was false and misleading when it was made. While plaintiffs may not ultimately be successful in proving this at trial, they certainly have alleged sufficient facts to withstand defendant's motion to dismiss.

For the foregoing reasons, defendant Marshall and Stevens' motion is denied in all respects.

SO ORDERED.